Shirley SOLOMON and Pamela K.
Sands, Plaintiffs–Appellees,

v.

FIRST AMERICAN NATIONAL BANK
OF NASHVILLE, Defendant–Appellant.

Court of Appeals of Tennessee,
Middle Section,
at Nashville.

March 8, 1989.

Permission to Appeal Denied by
Supreme Court June 26, 1989.

Mary Ann Reese, Nador Baydoun, John I. Harris, III, Nashville, for plaintiffs-appellees.

J.O. Bass, Jr., M. Milton Sweeney, Nashville, for defendant-appellant.

## OPINION

TODD, Presiding Judge.

The defendant, First American National Bank of Nashville, has appealed from the disposition of this case which includes separate actions by the two plaintiffs and counterclaims by the defendant against the plaintiff.

### The Case

This controversy originated in a $40,000 loan by the Bank to Lingerie by Sands, Inc., which loan was guaranteed by the Small Business Administration. The plaintiffs executed guaranties to secure the loan. After bankruptcy of the corporation, the plaintiffs joined in this action for alleged wrongful conduct of the Bank, consisting of:

1. fraud
2. negligence—misfeasance
3. intentional infliction of emotional distress
4. breach of good faith in accelerating debt
5. breach of duty to sell collateral in a commercially reasonable manner
6. rescission
7. outrageous conduct

The bank counterclaimed against plaintiff, Solomon, upon the guaranty signed by her and certain personal obligations of Solomon independent of the Lingerie by Sands, Inc. loan.

The counterclaim of the Bank states:

Comes now the Defendant, First American National Bank of Nashville and assumes the role as Counter–Plaintiff and sues Shirley Solomon on the grounds as stated below. Further, First American National Bank, states that it believes it has rights against Pamela K. Sands, however, Pamela K. Sands has filed a Petition for Relief under the provisions of Chapter 7, Title 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Tennessee, and therefore pursuant to such action this Counter–Plaintiff is stayed from proceeding against Pamela K. Sands at this time. In the event that action pending in the Bankruptcy Court for the Middle District of Tennessee is dismissed, First American National Bank of Nashville reserves its right to bring an action against said Pamela K. Sands.

The brief of appellant states:

The Bank counterclaimed against Plaintiff Solomon 1. to enforce her liability on her guaranty and also on other indebtedness she owed to the bank.

2. The bankruptcy on Plaintiff Sands stayed any counterclaim against her.

No other reference to the bankruptcy of Ms. Sands or justification for the rendition of a judgment in her favor if she was in

fact a bankrupt is found in the record or briefs.

## The Evidence

There is testimony that on September 2, 1982, Lingerie by Sands, Inc., executed to defendant a note of $40,000 secured by all of the assets of the corporation, and personal guaranties of the plaintiffs and of the Small Business Administration. The guaranty of plaintiff, Sands, was secured by trust deeds to certain realty, and the guaranty of plaintiff, Solomon, was secured by the pledge of a $10,000 certificate of deposit in the defendant bank.

The original controversy arose over the extent of the liability of Solomon on her guaranty. As to this issue, there is evidence of an oral understanding with a bank employee that the guaranty was limited to the $10,000 pledged C.D.; that Solomon did not read the guaranty before signing it; that the employee subsequently acknowledged that there had been an error and the correct amount of the Solomon liability was $10,000. The record contains a letter signed by the bank employee stating:

This letter will also limit the guarantee to $10,000.00 for Ms. Solomon

It is undisputed that plaintiff, Solomon, subsequently secured loans from defendant bank secured by trust deeds to her equity in various parcels of realty.

It is also undisputed that in late 1983 and early 1984, Lingerie by Sands, Inc., experienced "cash flow problems" and that, in March, 1984, the Corporation and the bank agreed that the corporation might pay only delinquent interest, that delinquent installments of principal would be deferred, and that a "working capital debt" due in February 1984, would be renewed.

There is testimony that, shortly after the March, 1984, agreement, the bank demanded a replacement for the $10,000 certificate of deposit, which had allegedly been lost, and suitable evidence and assignment of a life insurance policy on the life of Sands, and that the bank threatened to "offset" the personal deposits of plaintiffs against the amounts due the bank if they did not comply.

There is also testimony that, on April 5, 1984, Solomon removed her name from a joint account with her son; that, on April 9, 1984, the bank credited said account in the amount of $35,000 to the Lingerie by Sands, Inc., debt. This action was subsequently reversed by the bank pursuant to an agreement reached on April 25, 1984, whereby plaintiffs would pay delinquent installments on the $40,000 note and the bank would extend other debts and limit the guaranty liability of Solomon to $10,-000.

It is undisputed that, on or about May 11, 1984, Lingerie by Sands, Inc., filed a petition for protection under Chapter 11 of the Bankruptcy Act, after which the bank accelerated and demanded payment of the balance due on the $40,000 note from the guarantors, Sands and Solomon.

There is evidence that subsequently another employee of the bank demanded the entire balance due on the $40,000 note from Solomon, threatening to accelerate or "call" all of Solomon's debts to the bank.

On May 16, 1984, the Bank accelerated and demanded payment of all debts due from Solomon to the Bank. A bank employee admitted in his testimony that Solomon's personal debts were accelerated because Solomon refused to pay the entire amount due on the $40,000 note of Lingerie by Sands, Inc.

The debts of Solomon accelerated by the bank consisted of three notes:

(1) A note dated June 1, 1983, in the amount of $20,000 payable in monthly installments beginning July 1, 1983, secured by deed of trust to the interest of Solomon in six residential units on Glenrose.

(2) A note dated June 15, 1983, in the amount of $25,000 payable in monthly installments beginning August 1, 1983, and secured by trust deed on the same Glenrose property.

(3) A "master note" for a $50,000 line of credit dated March 9, 1984, secured by deed of trust on Solomon's interest in property on Battle Road. On April 26, 1984, $20,000 had been borrowed under this note with

interest due monthly beginning June 1, 1984.

The bank subsequently sold the assets of Lingerie by Sands, Inc., for $548.50, which produced a net of $115.04 after payment of expenses of sale.

On January 3, 1985, and January 30, 1985, the bank began foreclosure proceedings on the two trust deeds securing the Sands guaranty. The first sale produced only $100.00 in excess of a superior mortgage. There were no bidders at the other sale, there being a prior mortgage on the property.

The bank advertised the Battle Road property for foreclosure sale, but the sale was aborted because Solomon demanded that the property be sold in separate parcels. Subsequent, the property was sold to enforce a prior mortgage, and the lien of the Bank was thereby lost.

The $10,000 certificate of deposit of Ms. Solomon was cashed by the Bank and applied on the Lingerie by Sands, Inc., note.

It does not appear that there was any effort to enforce the lien of the Bank against the Glenrose property.

*The Findings of the Jury*

The Trial Court submitted to the jury 15 interrogatories which, together with the responses of the jury thereto are as follows:

1. Do you find that First American National Bank, acting by and through its employees, was negligent in its dealings with Shirley Solomon by failing to act as a reasonably prudent person would, or failing to use due care to avoid causing injury to its borrowers, or otherwise, and that these actions by the Bank were a substantial factor in causing her injuries or loss?

Yes: ___     No:  ✕

2. Do you find that First American National Bank has caused severe emotional distress to Shirley Solomon by acting with intent to do so, or by acting with a reckless disregard for the possibility of doing so, or otherwise caused her severe emotional distress?

Yes: ___     No:  ✕

3. Do you find that First American National Bank made fraudulent representations, or intentional or negligent misrepresentations, or otherwise misled Shirley Solomon, or her agents, and that she has relied on such statements to her detriment?

Yes:  ✕     No: ___

4. Do you find that First American National Bank made fraudulent representations, or intentional or negligent misrepresentations, or otherwise misled Pamela Sands and that she has relied on such statements to her detriment?

Yes:  ✕     No: ___

5. Do you find that First American National Bank acted in bad faith with respect to Shirley Solomon by refusing to discuss whether Shirley Solomon's guaranty was limited to $10,000 either originally or by the acts of First American National Bank, acting through its employees, or by demanding that Shirley Solomon pay off all obligations at once, or otherwise acted in bad faith?

Yes:  ✕     No: ___

6. Do you find that First American National Bank was commercially unreasonable or acted in bad faith or was reckless by disposing of collateral in the manner in which it did, or failed to dispose of collateral after providing notice of intent to do so, or failed to obtain a commercially reasonable value for the collateral, or failed to give reasonable notice, or otherwise failed to act in a commercially reasonable manner with regard to the method, manner, time, place and/or terms of the disposition of any of the collateral or otherwise?

Yes:  ✕     No: ___

7. If you have answered "Yes" to any one of or all of the interrogatories numbered 1, 2, 3, 5, or 6, please state the amount that is necessary to compensate Shirley Solomon for any actual damages she has sustained.

$ 161,000.00

8. If you have answered "Yes" to any one of or all of the interrogatories numbered 4 or 6, please state the amount that is necessary to compensate Pamela

Sands for any actual damages she has sustained.

$ <u>42,000.00</u>

9. If you determine that as a result of First American National Bank's actions concerning Shirley Solomon that punitive damages are appropriate in this case to punish First American National Bank, or to deter the Bank from ever doing similar acts again, or to make an example of the Bank to others, what amount of punitive damages are sufficient to punish First American National Bank?

$ <u>1,000,000.00</u>

10. If you determine that as a result of First American National Bank's actions concerning Pamela Sands that punitive damages are appropriate in this case to punish First American National Bank, or to deter the Bank from ever doing similar acts again, or to make an example of the Bank to others, what amount of punitive damages are sufficient to punish First American National Bank?

$ <u>100,000.00</u>

Counterclaim of First American National Bank

11. Do you find Shirley Solomon to be obligated on the Small Business Administration Guaranty in the amount of $40,000?

Yes: _____ No: <u>b ×</u>

12. If your answer to counterclaim interrogatory No. 11 is yes, then in what amount to you find Shirley Solomon is liable to First American National Bank?

Principal $<u>-0-</u> Interest $<u>-0-</u>

13. Do you also find that Shirley Solomon is liable to pay the reasonable attorney fees and expenses incurred by First American National Bank in connection with the collection of their obligations?

Yes: _____ No: <u>×</u>

14. Do you find that any time after the execution of Ms. Solomon's guaranty on September 2, 1982, that First American National Bank fraudulently or negligently represented to Ms. Solomon that the $40,000 guaranty was limited to $10,000.?

Yes: <u>×</u> No: _____

15. Do you find that Ms. Linda Hamsley or any other representative of First American National Bank fraudulently or negligently represented to Ms. Solomon the nature of her guaranty at the time the S.B.A. guaranteed loan to Lingerie by Sands, Inc. closed on September 2, 1982.

Yes: <u>×</u> No: _____

The Trial Court directed a verdict and entered judgment in accordance therewith as follows:

1. Judgment against Solomon for $20,000 plus interest, attorneys fees and expenses upon note dated April 26, 1984.

2. Judgment against Solomon for $20,000, interest, attorneys fees and expenses upon note dated June 1, 1983.

3. Judgment against Solomon for $25,000, interest, attorneys fees and expenses upon note dated June 15, 1983.

4. Judgment against Solomon for Master Card account in the amount of $308.24.

5. Solomon's suit on grounds of outrageous conduct and lack of commercially reasonable sale was dismissed.

6. Sands' suit on all grounds except lack of commercial reasonableness and punitive damages was dismissed.

Pursuant to findings of the jury, above, the Trial Court rendered judgment in favor of Solomon for $1,161,000.00 and in favor of Sands for $242,000.00.

In respect to each of the three Solomon notes, the judgment states:

Be it further ORDERED, ADJUDGED and DECREED that First American National Bank is entitled to recover its reasonable attorney fees and expenses and costs of collection with respect to said Note.

■ The judgment does not specify the amount of attorneys fees or expenses and costs of collection. It is therefore not a final judgment appealable as of right. Until all issues are decided, actions of the Trial Court remain subject to revision by it and are not appealable as of right. T.R. A.P. Rule 3(a). At this advanced stage of the appellate process, it is not deemed ex-

pedient to enforce Rule 3(a) which is waived without prejudice to the continuing power of the Trial Court to revise any of its decisions if it should see fit to do so.

### The Issues

The issues presented by the Bank involve:

1. & 2.  Failure to direct a verdict for the bank.

3.  Submission of certain issues to the jury.

4. 5. & 6.  Instructions to the jury.

7.  Excessiveness of the verdicts.

Issues presented by the plaintiffs involve:

1.  Direction of verdict on counterclaim.

2.  Direction of verdict as to part of plaintiffs' claims.

### Standard of Review

The direction of a verdict, either partial or total, is a ruling of law based upon uncontroverted evidence or lack of necessary evidence which requires entry of judgment for the moving party. *Norman v. Southern Ry. Co.*, 119 Tenn. 401, 104 S.W. 1088 (1907).

■ On motion for a directed verdict, trial judges and appellate courts must take the strongest legitimate view of the evidence in favor of the opponent, draw all reasonable inference therefrom in his favor, discard all countervailing evidence and deny the motion if there is any doubt to be drawn from the whole evidence. A verdict should be directed only when reasonable minds could draw but one conclusion. *Sauls v. Evans*, Tenn., 635 S.W.2d 377 (1982).

■ Likewise, the determination of proper instructions to the jury is a question of law to be determined from the theories of the parties, the evidence in the record and the law applicable thereto.

### Plaintiffs' First Issue

Plaintiffs first assert that the Trial Court erred in directing a verdict in favor of the Bank upon its counterclaim against Ms. Solomon. No response to the arguments supporting this issue is found in appellant's principal brief or reply brief.

Solomon concedes that she is indebted to the Bank on a $20,000 note dated June 1, 1983, but insists that the entire principal amount was not due, it having been reduced to $13,895 in May, 1984.

Solomon also concedes an indebtedness on the June 15, 1983, note, but asserts that the balance had been reduced to $20,264.90 in May 1984.

As heretofore noted, the amount of collection expenses had not been adjudged on these two notes and the April 26, 1984, note. For this reason, the judgment, especially as to them, remains open for revision by the Trial Court.

The judgments against Solomon on the three notes are vacated and, as to them, the judgment is remanded for revision and completion.

Solomon also argues that none of these notes was "in default" according to its terms and that the Bank had no right to "call" or accelerate the maturity of the notes, thereby to justify attempts to collect, including foreclosure. Whether these notes were "in default" is one of the issues relating to Solomon's right to recover in her suit for damages, and will be discussed in that connection.

### Plaintiffs' Second Issue
#### (Direction of verdict dismissing part of plaintiffs' claim)

It will be recalled that the Trial Judge directed a verdict against Solomon as a plaintiff in respect to outrageous conduct and lack of commercially reasonable sale. In response to interrogatories 1 and 2, above, the jury found that the Bank was guilty of no negligent conduct causing injury to Solomon and that the Bank was not guilty of intentional infliction of emotional distress. Plaintiffs do not complain of the verdict of the jury in this respect. These findings by the jury preclude any complaint as to the peremptory dismissal of Solomon's suit for outrageous conduct, for such

peremptory dismissal was thereby rendered harmless.

As to the direction of a verdict against Solomon on her charge of lack of commercially reasonable sale, the brief of plaintiff fails to point out wherein the defendant conducted a sale that was not commercially reasonable as to any property of Ms. Solomon. As pointed out above, the Bank "cashed" the certificate of deposit of Ms. Solomon.

Solomon insists that the disposition of the Certificate of Deposit was not commercially reasonable because the bank did not offer to sell the certificate to an investor but simply withdrew the deposit before maturity at a discount of $640.00. No evidence is cited or found to support a finding that a larger amount would have been realized by the sale of the certificate or otherwise.

The pledge agreement, Exhibit B to this opinion, provides:

Bank is hereby authorized to apply any or all funds represented by said ... Certificate of Deposit toward the payment of any note or notes representing unpaid balance of above loans of debtor maturity (whether by acceleration or not). . . .

No merit is found in the insistence that there was a commercially unreasonable disposition of the certificate of deposit.

Next, Solomon insists that the amount realized was not promptly credited to the debt and the entire amount was not credited to the debt. No evidence is cited or found as to misappropriation of the proceeds of the certificate. The real complaint seems to be that the Bank should have waited until maturity to cash the certificate, thereby to avoid the penalty of early withdrawal. Although this might have been a preferable procedure, in the absence of evidence, there is no basis in the record for finding the manner of disposition of the certificate to be unreasonable. Moreover, the difference to be realized, ergo damages, in this instance would be minimal.

The foreclosure sale of the Battle Road property was aborted, and never held. There is no evidence of a sale of the Glenrose property. There is therefore no evidence to support a judgment in favor of Solomon for holding a commercially unreasonable sale. The Trial Judge was correct in directing a verdict for the defendant on this ground of recovery, and was in error in submitting the issue to the jury and accepting its response thereto. This portion of the verdict of the jury (No. 6) is set aside.

The plaintiffs next insist that it was error to direct a verdict against Sands on her cause of action. It will be remembered that a verdict was directed against Sands in respect to her actions except those for lack of commercial reasonableness. In other words, verdict was directed against Sands in respect to her actions for:

1. Fraud
2. Negligence
3. Intentional infliction of emotional distress
4. Breach of good faith in accelerating debt
5. Rescission

1. The only suggestion of fraud in the entire record is the confusion as to whether Solomon guaranteed $10,000 or $40,000. This had no relation to the liability of Sands, and she has shown no loss therefrom.

2. The only negligence shown by the record is technical negligence of the defendant due to a failure of communications between its employees and/or departments whereby its collections department insisted upon payment of $40,000 by Ms. Solomon when another employee had agreed that she was liable for only $10,000.00. There is no showing that Ms. Sands was injured by this action if it were actionable negligence.

3. No evidence is cited or found to support intentional infliction of emotional distress upon Ms. Sands (outrageous conduct).

4. The evidence does not support an action by Sands for breach of good faith in accelerating debt. It is true that the parties made certain good faith agreements regarding extension of time for payment of the corporate debt, but these agreements were superseded by the intervening bank-

ruptcy of the corporation which authorized the acceleration of the corporate debt, ergo the obligation of the guarantors.

6. There is evidence which might support a partial rescission of the guaranty of Ms. Solomon to the extent of the excess over $10,000.00. However, there is no evidence to show any damage to Sands by the failure of the bank to effectively agree to such rescission, or to show that Sands was entitled to this relief.

Accordingly, plaintiffs' complaints as to the partial directed verdict against Sands are found to be without merit.

This completes the discussion of plaintiffs' issues.

### Issues of the Defendant

Defendant asserts that the Trial Court should have set aside the verdict in favor of Sands for three reasons.

First, it is insisted that there is no basis for finding No. 6 of the jury that the defendant

1. was commercially unreasonable, or
2. acted in bad faith or
3. was reckless in disposing of collateral in the manner in which it did, or
4. failed to dispose of collateral after providing notice of intent to do so, or
5. failed to obtain a commercially reasonable value for the collateral, or
6. failed to give reasonable notice, or
7. otherwise failed to act in a commercially reasonable manner with regard to the
   a. method, or
   b. manner, or
   c. time, or
   d. place, and/or
   e. terms of the disposition, or of any of the collateral, or
   f. otherwise

With due respect to the Trial Judge this is not a proper issue for presentation to a jury for a yes-no answer. The interrogatory being erroneous, the response thereto is invalid and ineffectual to support any verdict of damages.

Moreover, plaintiffs have provided no evidentiary citation to support an affirmative answer to any one of the 13 specific questions included in the interrogatory.

As to the sale of the assets of the corporation, the guarantors have no ground of complaint unless it be shown that another form or manner of sale would have produced exoneration of the guarantor. *Sedalia Mercantile Bank v. Loges Farms Inc.*, Mo. App., 740 S.W.2d 188 (1987); *Ferrous Financial Services Co. v. Wagnon*, 70 Or. App. 285, 689 P.2d 974 (1984). There is no showing that another form or manner of sale of the corporate property would have produced a greater return.

■ The uncontroverted evidence shows that a commercially reasonable sale was held; that the property was recovered from a mini-warehouse where it was stored; that it was transported to an auction house where auctions were held; that the sale was publicised by newspaper advertisements and circulars; and that about 100 people were present of whom 65 were registered bidders. The disappointing results were not attributable to any lack of commercial reasonableness.

■ As to the sale of realty, the Uniform Commercial Code requirements of a commercially reasonable sale have no application. T.C.A. §§ 47–9–102(1); 47–9–104(j).

It is argued that some of the personalty sold by defendant was actually property of Sands, but the complaint as amended contains no allegation which would support a verdict in favor of Sands for conversion of her personal property.

Defendant next insists that there was no material evidence to support an award of compensatory damage to the plaintiff, Sands.

The only damages shown by Sands is the loss by foreclosure of her equity in two parcels of realty by foreclosure to enforce her guaranty obligation. There is no showing of any impropriety in either foreclosure sale, therefore, any damage suffered by Sands is not attributable to the Bank.

■ Thirdly, defendant insists that no grounds are shown for the award of puni-

tive damages to Sands. In order to recover exemplary damages, actual damages must be shown. *Liberty Mutual Insurance Co. v. Stevenson*, 212 Tenn. 178, 368 S.W.2d 760 (1963); *Cullom & Maxey Camping Center, Inc. v. Adams*, Tenn.App., 640 S.W.2d 22 (1982); *Allen v. Melton*, 20 Tenn.App. 387, 99 S.W.2d 219 (1937).

The verdict in favor of Sands must be set aside and her suit must be dismissed.

By its second issue, defendant insists that the judgment in favor of Ms. Solomon should be set aside and her suit dismissed for three reasons.

As above indicated, the jury returned a verdict in favor of the Bank, and against Solomon on the issues of negligence and intentional infliction of emotional distress (outrageous conduct). There is no complaint on appeal to these findings which are treated as final.

As to the remaining grounds of Solomon's suit, the jury found for the plaintiff, Solomon, and against the defendant on the issues of misrepresentation (fraud), bad faith, and commercially unreasonable disposition of collateral.

The remaining theory of rescission was evidently not pursued by Solomon, and is presumed to have been abandoned. The judgment, quoted above, does not mention the liability of Solomon on the guaranty of the corporate note, and no complaint is made of this on appeal. Since the $10,-000.00 admitted obligation on the guaranty has been satisfied by cashing the pledged certificate of deposit, it appears that the effort to collect the remainder of the guaranty obligation (claimed by the bank and denied by Solomon) has been abandoned. This being true, the issue of rescission, that is, the avoidance of liability of the excess of the guaranty obligation over 40,000 has, for practical purposes, become moot.

This leaves for discussion the issues of Solomon's rights based upon misrepresentation (fraud), bad faith, and commercially unreasonable sales.

As to the ground of fraud, consideration must be given to the form of the guaranty signed by Solomon, a photostatic copy of which is attached to this opinion as Exhibit A.

It is to be noted that the figures $40,-000.00 are typed in a blank, are of different type from the body of the instrument, and are obvious to any literate person.

It is uncontroverted that Ms. Solomon was a literate business person, a real estate broker and a dealer in real estate.

To recover for fraud, a party must have acted in reliance upon the other party's misrepresentations or failure to disclose the facts. *Southern States Development Co. Inc. v. Robinson*, Tenn.App., 494 S.W.2d 777 (1972), *Hamilton v. Galbraith* 15 Tenn.App. 158 (1932), 37 C.J.S. Fraud § 29, p. 269.

Generally, a party dealing on equal terms with another is not justified in relying upon representations where the means of knowledge are readily within his reach. 37 C.J.S. Fraud § 34a p. 278.

Ordinarily, one having the ability and opportunity to inform himself of the contents of a writing before he executes it will not be allowed to avoid it by showing that he was ignorant of its contents or that he failed to read it. *Evans v. Tillett Bros. Const. Co. Inc.*, Tenn.App., 545 S.W.2d 8 (1976).

In *Dornholz v. Home of Daughters of Jacob for Aged Hebrew*, Mun.Ct., 19 N.Y. S.2d 17 (1940), it was held that an oral representation that a written instrument contained different terms from those which were actually contained in it were not actionable fraud since the person to whom the representation was made was presumed to have read the writing and could not be said to have relied on the oral representation of its contents. It was also held that failure to read a contract before signing it is gross negligence and should prevent the person guilty of such negligence from setting up that the writing contained terms other than those she believed it to contain.

In *Costello v. Larsen*, 182 Va. 567, 29 S.E.2d 856 (1944), it was held that, if the parties have equal means of information so

that with ordinary prudence either may rely upon his own judgment, they are presumed to have done so and no cause of action for fraud arises.

In *Bland v. Reed,* 261 Cal.App.2d 445, 67 Cal.Rptr. 859 (1968), it was held that, if means of knowledge are at hand and equally available to both parties, the injured party must show that he has availed himself of the means of information existing at the time of the transaction before he will be heard to say that he was deceived by the misrepresentations of the other party.

In *Haviland v. Southern California Edison Co.,* 172 Cal. 601, 158 P. 328 (1916) it was held that an employee signing a release in his possession could not avoid the release by claiming that the employer misrepresented the contents or effect of the release.

■ Under the circumstances of this case and the authorities cited, this Court concludes that any misrepresentation as to the contents of the guaranty agreement was not actionable fraud, and the jury was not justified in so finding.

The next ground of recovery found by the jury was "bad faith", described in issue No. 5 as follows:

Do you find that First American National Bank acted in bad faith with respect to Shirley Solomon by refusing to discuss whether Shirley Solomon's guaranty was limited to $10,000, either originally or by the acts of First American National Bank, acting through its employees, or by demanding that Shirley Solomon pay off all obligations at once, or otherwise acted in bad faith?

Plaintiffs' brief asserts that the "bad faith" of the defendant consisted of:

Hamsley's representations to Sands and Solomon pertaining to the limit of Solomon's liability.

The acceleration of the SBA guaranteed note.

The acceleration of Solomon's and Sands' other loans.

First American's actions concerning the collateral.

First American's overall dealings with Sands and Solomon as exhibited by its agents and employees, Hamsley & Martin.

This Court has previously held that misrepresentation of the contents of the guaranty instrument was not actionable fraud. Such misrepresentation might be a material circumstance to establish other actionable conduct.

The second element of bad faith is alleged to be the acceleration of the S.B.A. guaranteed note (the $40,000 note of the corporation). The note provides:

The indebtedness shall immediately become due and payable, without notice or demand, upon the appointment of a receiver or liquidator, whether voluntary or involuntary for the undersigned or any of its property, or *upon the filing of a petition by* or against *the undersigned under the provisions of* any State insolvency law or under the provisions of *the Bankruptcy Reform Act of 1978,* as amended,.... (Emphasis supplied).

It is uncontradicted that the corporation filed a petition for protection under Chapter 11 of the Bankruptcy Act on May 11, 1984.

It is uncontroverted that, on May 16, 1984, the Bank wrote Ms. Solomon notifying her of the bankruptcy petition of the corporation and demanding payment under the guaranty. On the basis of the guaranty signed by Ms. Solomon and the bankruptcy petition of the corporation, the demand letter would have been justified. However, two other factors intervene.

First, at the time of the May 16, 1984, letter, the Bank was holding the $10,000 certificate of deposit. It later was "cashed on December 10, 1984, before maturity, for $9,445.90 and credited on the corporate note.

Secondly, on October 3, 1983, prior to the bankruptcy of the corporation and acceleration of its note, a letter was addressed to Ms. Sands on the stationary of the Bank and signed by Linda B. Hamsely as follows:

We have agreed to release the certificate of deposit in the amount of $10,000.00 in consideration of a second mortgage deed of trust with equity in excess of $20,000. *This letter will also limit the guaranty to $10,000 for Ms. Solomon.* A current appraisal not more than twelve months old may be acceptable for use. However a current opinion letter will be required. (Emphasis supplied).

It is unquestioned that the emphasized portion of the letter was conveyed to Ms. Solomon. There is no evidence that the remainder of the letter was ever activated.

While the Bank had unquestionable authority to accelerate the corporate note, it is questionable that the Bank had the authority to demand payment of Ms. Solomon when its representative had previously waived her liability in excess of $10,000 and the bank held a certificate of deposit in this amount to secure the $10,000 liability.

The next ground of bad faith cited by Solomon is the acceleration of her personal loans. It is not controverted that Ms. Solomon's personal loans were current on May 16, 1984, when the Bank accelerated the corporate note and threatened to enforce the personal loans. The Bank asserts that it was justified in "calling" the loans because of the corporate bankruptcy, the resultant acceleration of its note and Ms. Solomon's failure to satisfy it under her guaranty.

Whatever the legal rights of the Bank to collect the $40,000 from Ms. Solomon, there was some lack of "good faith" in the combined action of the employees of the bank when one employee of the Bank wrote Ms. Solomon that her liability was only $10,000 (secured by the certificate of deposit) and the other employee subsequently tried to collect the remaining $30,000 from Ms. Solomon together with other indebtedness not yet due by threats of foreclosure and "offsetting" a personal deposit.

Unquestionably, the lack of communication and record keeping by the employees of the bank resulted in an embarrassing and regrettable episode in the relations of the Bank with one of its customers. Whether the misfeasance of the bank employees produced an actionable wrong is another question.

Plaintiff, Solomon, insists that there is a tort of bad faith. No authority is cited to support this statement, and none has been found by this court. Research discloses that good faith or the lack of it may be an element or circumstance of recognized torts, or breaches of contracts, but it does not appear that good faith, or the lack of it is, standing alone, an actionable tort.

The complaint, quoted above, asserts that the Bank "arbitrarily and capriciously" accelerated and demanded payment of Ms. Solomon's obligations to the Bank and wrongfully advertised security for sale. There is evidence that the only reason for accelerating the personal debts of Solomon was her denial of liability for the entire $40,000 corporate debt.

It may be reasonably argued that, where a contract grants discretionary powers to one party, there is an implied agreement that such powers will be reasonably exercised.

The allegations of the complaint and the evidence in the record are sufficient to support an action for breach of implied contract by failure to exercise within reasonable bounds the discretionary powers conferred by the contract. See T.C.A. § 47-1-203. Within these limitations, the portion of Ms. Solomon's suit styled "bad faith" may not be the subject of a directed verdict.

The remaining ground of Solomon's suit is "commercially unreasonable sale".

The commercial reasonableness of the cashing of the certificate of deposit has already been discussed.

Solomon argues that there was a commercially unreasonable sale of real estate, but her argument fails to state what sale was commercially unreasonable or where in the record the details may be found. The argument merely states:

The evidence in the present case clearly established that First American failed to dispose of the real estate in good faith, in accordance with the statutory and con-

tract requirements or in accordance with the deeds of trust.

As previously stated, the record does not show a sale of Solomon's real estate by or on behalf of the Bank. It does show that the Battle Road property was advertised for foreclosure sale, but that the sale was not held because Solomon demanded that the sale be in parts and not as a whole. If there has been no seizure or sale at foreclosure, it is difficult to conceive of a right of action for failure to hold a sale that is commercially reasonable or fails to comply with any statutory or contractual requirements.

In summary of the Bank's second issue, this Court finds no evidence to support a verdict for Solomon except the action of the Bank in accelerating and demanding payment of Solomon's personal obligations because of her denial of liability for the full amount of the $40,000 corporate debt.

The previous rulings upon the Bank's first and second issues will largely dispose of the remaining issues. For example, the Bank's third issue is:

Whether the Chancellor erred in submitting to the jury theories of liability that had been eliminated from the case by directed verdict at the close of the plaintiff's evidence.

As discussed heretofore, the Trial Judge did err in submitting to the Jury all of the issues except the unreasonable acceleration of Solomon's personal debts.

The Bank's fourth issue is as follows:

Whether the Chancellor erred in instructing the jury that a sale of collateral for less than the secured debt gives rise to a presumption of a commercially unreasonable sale.

As discussed heretofore, there was no occasion to submit to the jury any issue of commercial reasonableness.

The Banks' fifth issue is as follows:

Whether the Chancellor erred, in instructing the jury, by applying Uniform Commercial Code requirements to the foreclosure sale of real property.

As stated above, no sale of Solomon's realty is shown, hence there was no occasion for charging on this issue.

The Bank's sixth issue is as follows:

Whether the Chancellor erred, in instructing the jury, by applying Uniform Commercial Code requirements to the foreclosure sale of real property.

In respect to the two suits before this Court, the issue was not default but acceleration. The admitted bankruptcy petition of the corporation was grounds for acceleration for purposes of enforcing the guaranties securing the corporate loan.

The final issue of the Bank relates to the excessiveness of the award which is immaterial, since the award is being set aside for different reasons.

### Summary

The directed verdict and judgment in favor of the Bank and against plaintiff, Solomon, upon notes dated April 26, 1984, June 1, 1983, and June 15, 1983, is vacated and remanded for further consideration and proper determination of:

A.  Solomon Notes

1.  Whether said notes were due on the date of the counterclaim, September 14, 1984.

2.  The correct principal balance and interest due on said notes.

3.  The amount of attorneys fees and other allowable expenses.

4.  The amount due the Bank on said notes, if any, at the time of the filing of the counterclaim.

B.  Solomon Master Card account.

No error is asserted or found in this portion of the judgment, but this item is vacated and remanded for inclusion in the judgment to be ultimated by the Trial Court.

C.  The judgment in favor of Sands is reversed; a directed verdict is entered as to all aspects thereof; and the suit of Sands is dismissed.

D.  The judgment in favor of Solomon is reversed. A directed verdict is entered and the Solomon suit is dismissed as to

all of its aspects except for the alleged unreasonable acceleration of the personal obligations of Solomon to the Bank. As to this aspect of the Solomon suit, the cause is remanded for a new trial for determination of whether unreasonable acceleration occurred and, if so, the assessment of such damages as are proper and proven to have proximately resulted therefrom.

The costs of this appeal are taxed equally. That is, the appellate costs are taxed one third to the Bank, one third to Sands and one third to Solomon. The cause is remanded to the Trial Court for further proceedings.

Reversed in part, vacated in part, remanded.

CANTRELL and KOCH, J., concur.

---

EXHIBIT A

GUARANTY

September 2 19. 82

In order to induce **First American Bank of Nashville, N.A.** (hereinafter called "Lender") to make a loan or loans, or renewal or extension thereof, to
(SBA or other Lending Institution)
**Lingerie By Sands, Inc.** (hereinafter called the "Debtor"), the Undersigned hereby unconditionally guarantees to Lender, its successors and assigns, the due and punctual payment when due, whether by acceleration or otherwise, in accordance with the terms thereof, of the principal of and interest on and all other sums payable, or stated to be payable, with respect to the note of the Debtor, made by the Debtor to Lender, dated **9/2/82**, in the principal amount of **$40,000.00** with interest at the rate of **15.75** per cent per annum. Such note, and the interest thereon and all other sums payable with respect thereto are hereinafter collectively called "Liabilities." As security for the performance of this guaranty the Undersigned hereby mortgages, pledges, assigns, transfers and delivers to Lender certain collateral (if any), listed in the schedule on the reverse side hereof. The term "collateral" as used herein shall mean any funds, guaranties, agreements or other property or rights or interest of any nature whatsoever, or the proceeds thereof, which may have been, are, or hereafter may be, mortgaged, pledged, assigned, transferred or delivered directly or indirectly by or on behalf of the Debtor or the Undersigned or any other party to Lender or to the holder of the aforesaid note of the Debtor, or which may have been, are, or hereafter may be held by, any party, as trustee or otherwise, as security, whether immediate or underlying, for the performance of this guaranty or the payment of the Liabilities or any of them or any security therefor.

The Undersigned waives any notice of the incurring by the Debtor at any time of any of the Liabilities, and waives any and all presentment, demand, protest, or notice of dishonor, nonpayment, or other default with respect to any of the Liabilities and any obligation of any party at any time comprised in the collateral. The Undersigned hereby grants to Lender full power, in its uncontrolled discretion and without notice to the undersigned, but subject to the provisions of any agreement between the Debtor or any other party and Lender at the time in force, to deal in any manner with the Liabilities and the collateral, including, but without limiting the generality of the foregoing, the following powers:

(a) To modify or otherwise change any terms of all or any part of the Liabilities or the rate of interest thereon (but not to increase the principal amount of the note of the Debtor to Lender), to grant any extension or renewal thereof and any other indulgence with respect thereto, and to effect any release, compromise or settlement with respect thereto;

(b) To enter into any agreement of forbearance with respect to all or any part of the Liabilities, or with respect to all or any part of the collateral, and to change the terms of any such agreement;

(c) To forbear from calling for additional collateral to secure any of the Liabilities or to secure any obligation comprised in the collateral;

(d) To consent to the substitution, exchange, or release of all or any part of the collateral, whether or not the collateral, if any, received by Lender upon any such substitution, exchange or release shall be of the same or of a different character or value than the collateral surrendered by Lender;

(e) In the event of the nonpayment when due, whether by acceleration or otherwise, of any of the Liabilities, or in the event of default in the performance of any obligation comprised in the collateral, to realize on the collateral or any part thereof, as a whole or in such parcels or subdivided interests as Lender may elect, at any public or private sale or sales, for cash or on credit or for future delivery, without demand, advertisement or notice of the time or place of sale or any adjournment thereof (the Undersigned hereby waiving any such demand, advertisement and notice to the extent permitted by law), or by foreclosure or otherwise, or to forbear from realizing thereon, all as Lender in its uncontrolled discretion may deem proper, and to purchase all or any part of the collateral for its own account at any such sale or foreclosure, such powers to be exercised only to the extent permitted by law.

In accordance with paragraph 2 "(C)" (Or more) or the loan authorization, this guaranty is secured by personal property described on the reverse hereof.

Shirley Solomon

34 Gay Wind
Mt. Juliet, Tn. 37122

Witnessed by:

American Bank of Nashville, N.A.
820 West End Avenue
Nashville, Tn. 37203

NOTE —Corporate guarantors must use partnership guarantors must execute guaranty at the time of disbursement of loan.

RING THE GUARANTY)

EXHIBIT B

**First American**

First American Bank

## Security Agreement (Deposits)

DEBTOR: Lingerie By Sands, Inc.

ADDRESS: 4239 Harding Road, Nashville, Tn. 37205

or PLEDGER: Shirley Solomon _____ (if different from the Debtor)

hereby assigns and grants to FIRST AMERICAN BANK (hereinafter called "Bank") a security interest in the following property (hereinafter called "Collateral"):

☐ Regular Savings Account or Golden Savings Account # _____ in _____

(bank), in the name of _____ , including all future deposits and all interest due or to become due on present or future deposits.

☑ Certificate of Deposit # -13-1115678 _____, and any renewal thereof, in the principal amount of $10,000.00 together with all interest due or to become due issued by First American Bank of Nashville dated August 16 19 82 and maturing February 16 , 19 85 .

☐ Savings (Share) Account No. _____ in _____

(S&L Association), in the name of _____ , together with all funds added to said account, including all interest or dividends due or to become due.

☐ Passbook or Account No. _____ in _____

(Credit Union), in the name of _____ , together with all funds added to said account, including all interest or dividends due or to become due.

☐ (Trust Accounts, Agency Accounts or Other Misc. Assignments), (describe)

_____
_____
_____

To secure payment of the Debtor's note or notes of even date herewith in the aggregate principal or aggregate face amount of $ 40,000.00 .

This assignment shall be a continuing one and shall be effective for any renewals of above loan until same is entirely paid; and shall operate as security for payment of any other debt or liabilities of the Debtor to Bank whether now in existence or hereafter contracted, except that the advances, liabilities, and indebtednesses secured by this clause shall not include any debt subject to the disclosure requirements of the Federal Truth-in-Lending Act if at the time such debt is created any legally required disclosure of this security interest respecting such debt shall not have been made

Bank is hereby authorized to apply any or all funds represented by said Regular Savings Account, Golden Savings Account, or Certificate of Deposit toward the payment of any note or notes representing unpaid balance of above loans of Debtor upon default, at maturity (whether by acceleration or not) and thereafter, with principal and accrued interest and costs, if not otherwise paid. First American Bank of Nashville .

DATED September 2 , 1982      x By: _____ , A.V.P.

x _Shirley Solomon_      x _____

**BANK INFORMATION ONLY — TIME DEPOSIT OPERATIONS**

☐ HOLD          By          CD 1 Renewal #
                                CD
☐ CD RECEIVED      By  143      2 Renewal #
                                CD
☐ ENDORSED                     3 Renewal #

EXHIBIT 48

## ORDER

The plaintiffs, Shirley Solomon and Pamela K. Sands, have filed separate petitions to rehear which are found to be without merit and are denied.