# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

| | |
|---|---|
| ANNACO, INC., | ) |
| | ) |
| Plaintiff/Appellant, | ) Shelby Chancery No. 109046-3 R.D. |
| | ) |
| VS. | ) Appeal No. 02A01-9804-CH-00111 |
| | ) |
| JOHN H. CORBIN, CORBIN, INC., | ) |
| F/K/A PAUL DAVIS SYSTEMS, INC. | ) |
| OF MEMPHIS, a Tennessee | ) |
| Corporation, and PAUL W. | ) |
| DAVIS SYSTEMS, INC., | ) |
| | ) |
| Defendant/Appellee. | ) |

**FILED**

**December 31, 1998**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

APPEAL FROM THE CHANCERY COURT OF SHELBY COUNTY
AT MEMPHIS, TENNESSEE
THE HONORABLE D. J. ALISSANDRATOS, CHANCELLOR

**JEFFREY D. GERMANY**
**R. LEE WEBBER**
**MORTON, BREAKSTONE & GERMANY, PLLC**
Memphis, Tennessee
Attorneys for Appellant

**REED L. MALKIN**
**STEVEN R. WALKER**
Memphis, Tennessee
Attorneys for Appellee

**AFFIRMED**

**ALAN E. HIGHERS, J.**

**CONCUR:**

**DAVID R. FARMER, J.**

**HOLLY KIRBY LILLARD, J.**

Annaco Inc. ("Annaco") has appealed the trial court's grant of summary judgment

to John H. Corbin ("Mr. Corbin") and Corbin Inc. For the reasons stated hereafter, we affirm.

**Facts and Procedural History**

In May 1987, Corbin Inc. and Paul W. Davis Systems, Inc. ("PDSI") entered into a franchise agreement whereby Corbin Inc., the franchisee, obtained from PDSI, the franchisor, a Paul Davis Systems franchise. The franchise agreement described the purpose of the franchise as "the operation of a general contracting business," which encompassed "general construction and associated services of contracting, repairing, remodeling and altering homes, buildings and structures." Under the terms of the franchise agreement, Corbin Inc. was obligated, among other things, to pay PDSI a $50,000 franchise fee and to pay PDSI royalty fees on all contracts in the amount of *2½ percent* of Corbin Inc.'s "closed gross sales and services each month." In consideration for the obligations that Corbin Inc. undertook, it received, among other things, the right to use PDSI's systems, methods, procedures, computer programs, and other services. Corbin Inc. also received the exclusive right to conduct business using PDSI's trade name within a specified territory. The agreement established that its initial term was for only five years, though the term would renew from year to year with the payment of a $100 annual renewal fee, which would be waived for any year in which royalties paid to PDSI exceeded $5,000. The agreement also provided Corbin Inc. with the right to assign the agreement under certain conditions. One limitation on assignment was the prior written consent of PDSI.

At some point, Mr. Corbin, who is the President and principal stockholder of Corbin Inc., decided to sell the franchise, and he contacted PDSI to find out who represented PDSI in selling franchises. PDSI referred Mr. Corbin to Dave Kelly. Mr. Corbin contacted Kelly, and arranged for Kelly to act as Corbin Inc.'s agent for advertising and negotiating the sale of the franchise. After Kelly became involved, Kelly negotiated a deal for the sale of the franchise with Phillip Currier of Annaco. At some point during the sales and negotiation process, Currier was informed that the franchise royalty fee that Annaco would

2

be required to pay to PDSI would be *3½ percent*, to which Currier (Annaco) agreed. At no point during Corbin Inc.'s ownership and operation of the franchise, however, had Corbin Inc. paid royalty fees in excess of *2½ percent*.

On January 15, 1992, Corbin Inc. and Annaco entered into an agreement, entitled "Franchise Purchase and Sale Agreement," that provided, among other things, the following:

> [Annaco] has agreed to purchase the Franchise Territory from [Corbin Inc.].
> . . . .
> 1. Purchase and Sale. [Corbin Inc.] agrees to sell to [Annaco] and [Annaco] agrees to purchase from [Corbin Inc.]:
> (a) All franchise rights owned by [Corbin Inc.] in the Franchise Territory.
> (b) The assets described [therein].
> 2. Purchase Price. The purchase price for [Corbin Inc.'s] rights to the Franchise Territory and the Personal Property Assets shall be $137,000 ....
> . . . .
> 6. Franchise Compliance. All parties agree to execute any documents to effect this transfer in order to comply with the requirements of [PDSI] concerning the transfer. [Annaco] agrees to at all time comply with all applicable requirements of [PDSI] under the new franchise agreement to be signed by [Annaco] at or following the closing.
> . . . .
> 15. Closing Requirements-Seller. At closing, [Corbin Inc.] shall deliver to [Annaco] the following:
> a) A Tri-Party Agreement as required by [PDSI], whereby [Corbin Inc.] transfers and [Annaco] assumes all rights and obligations for the Franchise Territory.
> . . . .
> 23. Franchise Agreement. Purchaser shall execute a new current Franchise Agreement with [PDSI].

As contemplated by paragraph 15(a) of the Franchise Purchase and Sale Agreement, Corbin Inc., Annaco, and PDSI also entered into a separate "Tri-Party Agreement" at the same time the Franchise Purchase and Sale Agreement was executed. This Tri-Party Agreement provided, among other things, the following:

> WHEREAS, [Corbin Inc.] wishes to sell and [Annaco] wishes to purchase all of [Corbin Inc.'s] right to operate a [PDSI] franchise, *as evidenced by and incorporated in a Franchise Agreement between [PDSI] and [Corbin Inc.] dated May 18, 1987 (the "Franchise Agreement")* ....
> . . . .
> 1. [PDSI] hereby agrees to the transfer of the Franchise from [Corbin Inc.] to [Annaco].
> . . . .
> 8. *[Annaco] acknowledges that it has received and examined the Franchise Agreement* .... [Annaco] agrees to abide by and be bound by the terms and provisions of the Franchise Agreement ....
> . . . .
> 12. [Annaco] HEREBY ACKNOWLEDGES THE FOLLOWING:

3

(1)    [Annaco] IS PURCHASING THE FRANCHISE FROM [Corbin Inc.], NOT FROM [PDSI].

. . . .

On February 4, 1992, which was *after* the sale of the franchise to Annaco, Annaco and PDSI both signed and executed a new franchise agreement. The terms of this new agreement, however, are notably different from the terms of the earlier Corbin Inc. / PDSI franchise agreement that had been assigned to Annaco. Most notably, under the terms of the new franchise agreement, Annaco was to pay PDSI royalty fees on all contracts in the amount of *3½ percent* of Annaco's closed gross sales and services each month.[1]

Also, at some point *after* the sale of the franchise and *after* execution of the new Annaco / PDSI franchise agreement, Mr. Corbin reached an agreement with PDSI, whereby Corbin Inc. began receiving 28.6% percent of Annaco's royalty payments to PDSI, which is equivalent to the one percent increase in royalty payments that Annaco began paying under its new franchise agreement. Mr. Corbin had already been aware of another originating franchisee in Kentucky who, several years before, sold his franchise and then, after the sale, continued to receive such payments. Therefore, in April or May of 1992, Mr. Corbin contacted PDSI to inquire about whether it was possible for him to receive these payments. PDSI agreed to the payments. The agreement was not, however, any part of the franchise sale from Corbin Inc. to Annaco, and Mr. Corbin and PDSI did not reach any such agreement prior to or at the time of the sale of the franchise. According to the undisputed proof before this Court, PDSI's agreement to make these payments, which have stopped since the filing of this lawsuit, was merely a subsequent gift and was not supported by any consideration.

On February 26, 1997, Annaco filed suit against Mr. Corbin and Corbin Inc., alleging breach of contract, fraud, and conversion based upon the "royalty" payments from PDSI

---

1. In addition to other changes, the new franchise agreement also increased the minimum royalty fee rate, which is a minimum amount to be paid for each one thousand people in the franchise territory.

to Corbin Inc.[2]  After both Mr. Corbin and Corbin Inc. filed separate answers to Annaco's Complaint, they moved for summary judgment.  Subsequently, depositions of Mr. Corbin and of Phillip Currier, which set forth the above undisputed facts, were filed.  After the trial court heard arguments on March 6, 1998, the trial court granted summary judgment to both Mr. Corbin and Corbin Inc.  Thereafter, Annaco appealed.  Therefore, the issue presented to this Court on appeal is whether the trial court erred in granting summary judgment to Mr. Corbin and Corbin, Inc. (hereafter collectively referred to as "Defendants").

## Analysis

On appeal, Annaco argues that the trial court's grant of summary judgment was improper with respect to each of the claims that Annaco asserted, including breach of contract, fraud, and conversion.  We disagree.

## A.  Breach of Contract

Annaco's claim for breach of contract is premised upon either of the following two theories:

1.  Corbin Inc. agreed to sell "all franchise rights" owned by Corbin Inc., and it breached this agreement because, while Corbin Inc. was obligated to pay only a 2½ percent royalty fee, Annaco ultimately was required to pay a higher 3½ percent royalty fee.

2.  Corbin Inc. had or obtained the right to receive the "royalty" payments from PDSI at the time of the execution of the Franchise Purchase and Sale Agreement, and Corbin Inc.'s receipt and acceptance of the payments amounted to a breach of Corbin Inc.'s agreement to sell all franchise rights owned by Corbin Inc.

Essentially, as summarized in Annaco's brief, Annaco asserts *either* that Corbin Inc. failed to transfer its right to pay PDSI a 2½ percent royalty fee *or* that it secretly retained a right that existed at the time of the franchise sale to receive a one percent kickback on the royalty payments.  Neither of these theories, however, is supported by proof.  The undisputed proof in the record before this Court establishes that the Franchise Purchase and Sale Agreement did, in fact, assign all rights and obligations of the original Corbin Inc.

---

2.  Annaco also named Paul Davis Systems, Inc. as a defendant, seeking an interlocutory injunction to prevent the payments from Paul Davis Systems, Inc. to Corbin Inc. pending the outcome of this litigation.  Annaco, however, subsequently voluntarily nonsuited Paul Davis Systems, Inc., and Paul Davis Systems, Inc. was dismissed without prejudice.

/ PDSI franchise agreement to Annaco. This assignment included the obligation to pay only a 2½ percent royalty fee.[3] Moreover, the undisputed proof establishes that Corbin Inc. did *not* possess any right to receive a "kickback" on royalty payments at the time of the franchise sale. Accordingly, we find Annaco's arguments relating to breach of contract to be without merit. In fact, we find it interesting to note that, even though Annaco later bound itself to pay a higher royalty fee rate to PDSI, the franchise sale, in a sense, initially transferred to Annaco a greater benefit than that for which it bargained, because it had expressly agreed to a 3½ percent royalty fee rate.

### B. Fraud

As outlined and argued by Annaco, its claim for fraudulent misrepresentation is based upon the assertion that Corbin Inc. affirmatively misrepresented, prior to the execution of the Franchise Purchase and Sale Agreement, that Corbin Inc. paid royalty fees at the rate of 3½ percent. Though the depositions that were filed regarding summary judgment merely address a representation that Annaco *would* pay a 3½ percent royalty fee (not what Corbin Inc. previously paid), Annaco's Complaint asserts the unrebutted allegation that Corbin Inc. misrepresented the royalty fees that Corbin Inc. previously paid. Even taking this allegation as true, however, we find that summary judgment in this case was proper.

In an action for fraudulent misrepresentation, a plaintiff must show: (1) that the defendant made a representation of an existing or past fact; (2) that the representation was false; (3) that the representation related to a material fact; (4) that the representation was made either knowingly, recklessly, or without belief in its truth; (5) that the plaintiff acted reasonably in relying on the representation; and (6) that the plaintiff suffered damage as a result of the representation. Metropolitan Gov't v. McKinney, 852 S.W.2d 233, 237 (Tenn. App. 1993).

This Court has previously recognized that the reasonableness of a plaintiff's reliance

---

3. Though the issue is not before this Court, we are unaware of any consideration for Annaco's subsequent separate agreement with PDSI to pay a higher royalty fee rate.

on an alleged misrepresentation, which is one of the essential elements to a claim of fraudulent misrepresentation, is *generally* a question of fact inappropriate for summary judgment. City State Bank v. Dean Witter Reynolds, Inc., 948 S.W.2d 729, 737 (Tenn. App. 1996). However, as with other questions of fact, the reasonableness of reliance must amount to a genuine issue in order to defeat summary judgment. See Byrd v. Hall, 847 S.W.2d 208, 215 (Tenn. 1993). Disputed material facts do not create a genuine issue unless a reasonable jury could legitimately resolve that fact in favor of either party. Id. If a reasonable jury could *not* resolve that fact in favor of either party, then summary judgment is proper as a matter of law. Id.

Factors relevant to a determination of the reasonableness of a plaintiff's reliance on a misrepresentation include, among other things, the following: (1) the plaintiff's business expertise and sophistication; (2) the existence of longstanding business or personal relationships between the parties; (3) the availability of the relevant information; (4) the existence of a fiduciary relationship; (5) the concealment of the fraud; and (6) the opportunity to discover the fraud. See City State Bank, 948 S.W.2d at 737. Based upon the undisputed proof presented to this Court, each of these factors weigh against a finding of reasonable reliance. As to Phillip Currier's (Annaco's) business expertise and sophistication, we note that Mr. Currier has a degree in business administration and has many years of prior experience in dealing with business contracts, including, among other things, real estate, insurance, and securities. No longstanding business or personal relationship existed between the parties prior to negotiations and execution of the Franchise Purchase and Sale Agreement. No fiduciary relationship existed between Annaco and Corbin Inc. or Dave Kelly, who acted as Corbin Inc.'s agent. Most importantly, however, the Tri-Party Agreement, to which Annaco was a party, expressly provided that Annaco received and examined the original Corbin Inc. / PDSI franchise agreement, which clearly evidenced Annaco's right to pay a franchise fee of only 2½ percent.

Generally, a party dealing on equal terms with another is not justified in relying upon representations where the means of knowledge are readily within its reach. Solomon v.

7

First American Nat'l Bank, 774 S.W.2d 935, 943 (Tenn. App.1989).  Moreover, a party to a written agreement is charged with knowledge of the agreement's contents.  Id.  In this case, the express terms of the Tri-Party Agreement establish that Annaco received and examined the original Corbin Inc. / PDSI agreement.  Accordingly, Annaco's right to pay only 2½ percent was revealed to Annaco.  We conclude, therefore, that under the facts of this case, a reasonable jury could *not* find that Annaco reasonably relied upon Corbin Inc.'s alleged misrepresentation when it later bound itself to pay a higher royalty fee rate to PDSI.[4]  As such, summary judgment relating to Annaco's fraud claim was appropriate.

### C. Conversion

Annaco's only remaining claim against Mr. Corbin and Corbin Inc. is based upon conversion.  We find this issue to be without merit.  The undisputed proof in the record before this Court fails to demonstrate either that Annaco possessed the amounts received by Corbin Inc. at the time of the alleged conversion or that Annaco possessed a right to immediate possession of the amounts at such time.  See Mammoth Cave Production Credit Ass'n v. Oldham, 569 S.W.2d 833, 836 (Tenn. App. 1977).

**Conclusion**

Our disposition of this appeal does not contemplate whether, under the facts set forth herein, *any* claim for relief could have been maintained by Annaco.  We conclude, however, that summary judgment was proper as to those claims asserted and as to those parties from whom relief was sought.  Therefore, we affirm the trial court's grant of summary judgment to Mr. Corbin and Corbin Inc.  Costs of this appeal are taxed to Annaco, Inc., for which execution may issue if necessary.

---

4. Prior to Annaco's execution of a new franchise agreement with PDSI, it possessed all the same rights and duties that Corbin Inc. previously possessed.

_____

HIGHERS, J.


CONCUR:


_____

FARMER, J.


_____

LILLARD, J.