**IN THE COURT OF APPEALS OF TENNESSEE
EASTERN SECTION AT KNOXVILLE**

| | | |
|---|---|---|
| BOBBY R. REED, | ) | |
| | ) | KNOX CIRCUIT |
| Plaintiff/Appellee | ) | |
| | ) | No. 03A01-9603-CV-00081 |
| v. | ) | |
| | ) | |
| NATIONAL FOUNDATION LIFE | ) | |
| INSURANCE COMPANY and | ) | |
| MARK BRADSHAW, | ) | |
| | ) | REVERSED |
| Defendants/Appellants | ) | |

R. Franklin Norton; R. David Benner, Knoxville, For the Appellant National Foundation Life Insurance Company.

David T. Black, Maryville, For the Appellant Mark Bradshaw

Eugene Dixon, Maryville, For the Appellee

**O P I N I O N**

INMAN, Senior Judge

This is a Rule 9 appeal from a judgment denying the defendants' motions for summary judgment. The issue is whether an insurance agent has the apparent authority to waive the conditions for issuance of a policy and the limitations on his authority as contained in the application for the policy. We hold that the agent has no such authority and therefore grant the motions for summary judgment.

Our review is *de novo* upon the record of the trial court, with no presumption of the correctness of the trial court's findings. *Roberts v. Roberts* 845 S.W.2d 225 (Tenn. Ct. App. 1992).

On January 7, 1994, the plaintiff was solicited by Mark Bradshaw to purchase a policy of health insurance from National Foundation Life Insurance Company (NFLIC). He testified that he was "informed by Mark Bradshaw that my health

insurance coverage would become effective upon the signing of certain insurance forms and the payment of the first monthly premium." He further testified that "I did not read the insurance forms because I was assured by Mark Bradshaw that I had full coverage."

On the same day, the plaintiff signed (1) an Application for Health Insurance, (2) an Applicant's Statement, and (3) a Telephone Contact Authorization and Agreement.

The Applicant's Statement contains this provision:

> I understand that the agent cannot change, alter or amend any NFL information requirement. I also understand that the agent cannot change, alter or amend the policy. I further understand that the agent has no authority to make any representations about the conditions under which NFL will issue a policy or make a policy effective.

The Application for the policy contains this provision:

> I understand that the insurance applied for shall be subject to the provisions and conditions of the policy, and that the policy shall not be effective until the policy has been actually issued, with first premium paid and delivered to the insured while the health of all persons named in this application remains as stated herein. . . I further understand that losses due to Pre-existing Conditions, diseases or bodily injuries occurring prior to the Effective Date of the Policy are not covered. . . unless otherwise provided.

The Telephone Contact Authorization and Agreement informed the plaintiff that he would be contacted by telephone and that the application process might take as long as two weeks.

The plaintiff admits that he did not read any of the three documents he signed concurrently with his conversation with Bradshaw.

NFLIC received the Application on January 12, 1994. On January 19, 1994 NFLIC called the telephone number of the plaintiff and was informed that he had suffered a heart attack on January 15, 1994. NFLIC thereupon notified the plaintiff that it was postponing consideration of his application because his health condition had changed since the application was submitted. No policy was issued.

The complaint was filed January 11, 1995. The plaintiff alleged that Bradshaw was an agent of NFLIC, which, through its agent, promised to issue to the plaintiff a policy of health insurance to become effective immediately upon the execution of certain insurance forms. Plaintiff further alleged that Bradshaw advised him to cancel his existing coverage.[1]

The defendant NFLIC admitted that Bradshaw was an independent agent authorized to solicit business on its behalf but denied his authority to control the issuance of a policy or the effective date of a policy. It averred that the application was merely an offer by the plaintiff to purchase a policy of health insurance, which offer was subject to acceptance or rejection, and that Bradshaw had no actual or apparent authority to bind NFLIC, which the plaintiff acknowledged in writing.

Both NFLIC and Bradshaw moved for summary judgment. The motion of NFLIC averred that it issued no policy and that the referenced documents reveal as a matter of law that Bradshaw's statements, if made, are not binding on it because the application provides that coverage was not effective until the policy was issued. Bradshaw's motion essentially averred that since the application signed by the plaintiff clearly provides that the policy will not become effective until delivery, there is no genuine issue of material fact.

I

The trial judge was of the opinion that *Bill Brown Const. Co. v. Glen Falls Ins. Co.,* 818 S.W.2d 1 (Tenn. 1991) precedentially controls the disposition of the case at bar. In *Brown,* the plaintiff was a specialized highway hauler of interstate shipments. Brown negotiated with the defendant's agent for a "full coverage policy" on cargos, which were usually oversized and required special transport permits. The agent told Brown that he had full coverage. About two years later, a large piece of machinery being transported was destroyed when it struck an underpass on

---

[1]This was not accomplished for reasons not relevant to the disposition of this case.

Interstate 40. Coverage was denied because the truck (as distinguished from its cargo) did not collide with the bridge. The pertinent insurance provision provided coverage for losses to goods caused by "collision of the conveyance with any other vehicle or object." The principal issue was whether the agent, who was the statutory agent of the defendant pursuant to TENN. CODE ANN. § 56-6-147, had the apparent authority to waive the limitation on cargo coverage. The Supreme Court held that *any contractual provision . . .* may be waived by an officer or agent who has actual or apparent authority to do so. The thrust of *Brown* provides:

> We reaffirm the long-standing rule in Tennessee that *any* contractual provision of a policy of insurance, whether part of an insuring, exclusory or forfeiture clause, may be waived by the acts, representations or knowledge of the insurer's agent . . . "

We think it evident that the plaintiff cannot be permitted to stultify himself in the manner sought.

In *Arnold v. Locomotive Engineer's Mutual Life and Accident Ins. Assn.,* 204 S.W.2d 191 (Tenn. Ct. App. 1946), the insured signed an application which provided that "I understand that the insurance herein requested shall not take effect until and unless this application is approved at the Home Office." The plaintiff contended that the agent who took the application made an oral contract binding on the company, that coverage was immediately afforded and that the company was estopped to deny coverage because it had negotiated the check tendered for the first premium. The Court held that the applicant was bound by the language in the application requiring approval of the Home Office, reasoning that the insured was charged with knowledge of the limitations upon the authority of the agent as stated in the application, and that

> "one who deals with an agent knowing that he is clothed with circumscribed authority and that his act transcends his powers, cannot hold his principal . . ."

In *Brown,* the agent had apparent authority to widen coverage, as contrasted to the case at bar, wherein it is not disputed that the plaintiff acknowledged, in

writing, that agent Bradshaw "cannot change, alter, or amend any NFLIC requirement" and that "I further understand that the agent has no authority to make any representations about the conditions under which NFLIC will issue a policy or make a policy effective." Neither is it disputed that the plaintiff signed an application which stated that "I understand that the . . . policy shall not be effective until the policy has been actually delivered . . . " It seems to us that the case at bar is obviously distinguishable from *Brown,* not only with respect to the facts but with respect to the underlying legal issue of whether the agent was clothed with apparent authority to determine the effective date of coverage.

*Brown* did not purport to overrule *Arnold,* which clearly is expositive of Tennessee law that an application for coverage which provides that coverage is not effective until the application is approved. It is merely an offer by the applicant to enter into an insurance contract, and until there is an acceptance there is no contract. While the plaintiff alleges that he did not read the documents, it is settled law in Tennessee that he is nonetheless charged with knowledge of their contents. *Solomon v. First American National Bank,* 774 S.W.2d 935 (Tenn. Ct. App. 1985).

We hold that the motion of NFLIC is well taken and should be granted.

**II**

Although not clearly stated, plaintiff's theory of recovery against agent Bradshaw is apparently based on the principle that an agent purporting to make an unauthorized contract on behalf of his principal may be liable to a third party on the ground that he warrants his authority to enter into the contract:

> It is well settled that one who purports as agent to enter into a contract, upon which the principal is not bound because of the fact that the agent has contracted without authority or in excess of his authority, is personally liable for the damage thus occasioned by the other contracting party.
> 3 Am.Jur.2d *Agency* § 303.

However, as is here determinative, it is *essential* to any such third party's right of action that the third party purporting to hold the agent liable must have acted without knowledge, or imputed knowledge, of the agent's lack of authority:

> To give a party a right of action against a professed agent, he must have been ignorant of the lack of authority and have acted upon the faith of the express or implied representations that the professed agent had the authority assumed. Similarly, the agent is not subject to liability to the third party if he sufficiently manifests that he does not warrant his authority and makes no tortious misrepresentation.
> *Ibid.*

The Restatement (Second) of Agency, § 329, provides:

> A person who purports to make a contract, conveyance or representation on behalf of another who has full capacity but whom he has no power to bind, thereby becomes subject to liability to the other party thereto upon an implied warranty of authority, *unless he has manifested that he does not make such warranty or the other party knows that the agent is not so authorized.*

An agent is not liable to the third party if he sufficiently manifests that he does not warrant his authority:

> A person who purports to make a contract, conveyance or representation on behalf of a principal whom he has no power to bind thereby is not subject to liability to the other party thereto *if he sufficiently manifests that he does not warrant his authority and makes no tortious misrepresentation.*
>
> If the agent gives notice to the third person that the existence of the authority is not warranted, he is not liable, although the other does not learn of, or forgets this. Thus, if the agent, in accordance with the prior course of business between them, sends a notification of such lack of warranty, *or if a statement of the same purport is conspicuously placed upon the memorandum of the contract, the fact that the third person does not read the notification is immaterial.*

The documents signed by the plaintiff acknowledging the lack of authority of agent Bradshaw are a complete refutation of his purported cause of action against the agent.

He cannot assert a claim against the agent while acknowledging that he was aware that the agent had no authority in the premises.  The motion of the agent for summary judgment is therefore well-taken.

The judgment is reversed and the case is dismissed at the costs of the appellee.

_____
William H. Inman, Senior Judge

CONCUR:


_____
Herschel P. Franks, Judge


_____
Charles D. Susano, Jr., Judge