Warren CAMPBELL, James H. Campbell, Benjamin H. Johnson, Carl Senne, Plaintiffs-Appellants,

v.

PRECISION RUBBER PRODUCTS CORPORATION, Defendant-Appellee.

Court of Appeals of Tennessee, Western Section, at Nashville.

May 22, 1987.

Application for Permission to Appeal Denied Aug. 3, 1987.

John Wm. Martin, Lebanon, for plaintiffs-appellants.

Russell F. Morris, Jr., Nashville, for defendant-appellee.

CRAWFORD, Judge.

This dispute arises out of defendant's decision to terminate health insurance benefits of the four plaintiffs, former employees of defendant. The chancellor, sitting without a jury, dismissed the case and plaintiffs' appeal.

The pertinent facts are basically undisputed. Plaintiffs were long-time employees of defendant under what amount to contracts terminable at will. In 1963, they transferred from defendant's Ohio plant to the defendant's plant in Lebanon, Tennessee, primarily because of their established employment and the retirement benefits they hoped to receive under the then existing plan. In about the middle of June, 1979, plaintiffs were informed that their employment with defendant was being terminated and they were told to meet with the company's Director of Industrial Relations and the designated Administrator of the Welfare Benefits Plan, George Harding, to determine what benefits were available to them.

The description of the employees' retirement benefits pension plan and the options available to the employees was provided to the employees in a booklet dated June, 1960, entitled "A Pension Plan For Employees of Precision Rubber Products Corpora-

tion." The part pertinent to this controversy provides:

Insurance for retired employees

When you retire under the Normal, Early or Disability Retirement sections of the Plan your Hospitalization, Surgical and Medical and Diagnostic X-ray insurance protection is continued for you by the Company. Your dependents listed on the Company records at the time of your retirement are also covered.

In addition, your Life Insurance is continued for you at one-half of the coverage in effect immediately prior to your retirement.

This insurance protection will continue as long as you receive pension benefits.

\* \* \* \* \* \*

The Corporation intends the Plan to be permanent, but the right is reserved by the Board of Directors to amend, suspend, or terminate the Plan.

\* \* \* \* \* \*

Plaintiffs relied on the terms and provisions of the booklet as the basis for their claims to the retiree insurance benefits.

Harding conferred with each plaintiff individually, and they were told that an election of early retirement entitled them to severance pay based on years of service, accrued vacation pay, $5,000 life insurance policy, and the Blue Cross/Blue Shield health insurance coverage until their death. They were also informed that there were optional choices for payment of pension benefits, and each plaintiff elected to receive a lump sum benefit payment. W. Campbell received $39,000, J.H. Campbell received $41,765.39, Johnson received $45,009.98, and Senne received $32,154.64. Plaintiffs, Campbell, Campbell, and Johnson, each received a handwritten note from Harding regarding their meeting which confirmed their insurance benefits and Senne received a handwritten note, but it did not mention the insurance benefits. Senne needed some additional time to qualify for early retirement, and Harding allowed him to take a leave of absence in order to accrue the necessary time for early retirement benefits to take effect at a later date.

By letter of July 24, 1981, Harding advised all retirees that certain changes were made in the insurance benefits provided, and by letter of June 24, 1982, Harding advised all retirees and employees that the health insurance plan and the life insurance plan would be changed to Prudential Insurance Company.

By letter of September 2, 1983, the plaintiffs were informed that the hospital and surgical benefits for retirees were terminated effective October 1, 1983. Plaintiffs filed the original complaint on September 29, 1983, alleging breach of an employment contract, breach of an implied covenant of good faith and fair dealing and equitable estoppel. Plaintiffs sought a mandatory injunction to compel the defendant to reinstate and continue in force the insurance coverage, and also sought costs, expenses, and attorneys fees. The court issued a preliminary injunction requiring defendant to cover plaintiffs' claims under the insurance policy pending the litigation. Subsequently, on March 5, 1986, plaintiffs amended their complaints and alleged an additional cause of action under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq.

The trial court dismissed plaintiffs' petition and granted judgment against the plaintiffs for the amount of medical benefits paid during the time the preliminary injunction requiring coverage was in effect.

The parties concede that the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. is controlling on the issues in this case and that state courts have concurrent jurisdiction with the federal courts to hear cases under the Act. It is also conceded that the insurance benefits claimed by plaintiffs were provided pursuant to an "employee welfare benefit plan" as defined by ERISA.

Although plaintiffs rely on the employees' booklet for their claims, they assert that their "forced" early retirement is not one of the categories described and that Harding had to fashion the plan to meet the circumstances. We have difficulty following this argument, but in any event the record is clear that the plaintiffs were ter-

minated and then allowed to take "early retirement" under the benefit plan.

Plaintiffs' only issue for review is whether the trial court erred in dismissing their case.

■ Section 514 (a) of ERISA, 29 U.S.C. § 1144(a) preempts all state laws relating to any employee benefit plan covered by ERISA. *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983).

In *In re White Farm Equipment Company*, 788 F.2d 1186 (6th Cir.1986), the court said:

> ERISA's broad preemptive provision makes it clear that Congress intended to establish employee benefit plan regulation as an exclusive federal concern with federal law to apply exclusively, even where ERISA itself furnishes no answer.

*Id.* at 1191.

Welfare benefit plans are excluded from the stringent minimum vesting, participation, and funding standards applicable to pension plans. ERISA § 201 (1), 301(a)(1), 29 U.S.C. §§ 1051 (1), 1081 (a)(1).

In *In re White Farm Equipment Company*, 788 F.2d 1186 (6th Cir.1986), the Court was called upon to "determine the appropriate federal rule of decision governing the termination of nonunion retiree welfare benefit plans where the employer pays the entire cost of benefits." *Id.* at 1191. The court held that there was no statutory, or federal common law rule which mandated a limitation on the right of an employer to exercise, after retirement, a reserved right of termination of an employee welfare benefit. The court noted that there was no prohibition against agreements between employer and employees concerning the vesting of welfare benefits or the termination of welfare benefits and that the construction of such agreements was for the court.

In the case before us, it is uncontroverted that the defendant had the unqualified right to amend, suspend, or terminate the plan.

The trial court found that plaintiffs relied on the language of the book as a basis for their claims to the insurance benefits and that by virtue of their acceptance of lump sum benefits they lost their status as eligible retirees for the group insurance benefits, which as unvested welfare benefits, are forfeitable under ERISA. Plaintiffs assert that Harding told them that they could accept a lump sum settlement and still be entitled to the insurance benefits. They contend that this statement by Harding as the administrator of the plan acted as an amendment to the plan or at least estopped the defendant from terminating the plan.

If we accept for the purpose of argument plaintiffs' first contention, the terms of the plan allowing the defendant to amend, suspend, or terminate the plan would still prevail. For instance, if defendant concedes that Harding had the authority to amend the plan to allow insurance benefits after pension benefits terminate, there is nothing that changes the provision of the plan allowing defendant to further amend, suspend, or terminate the plan. Therefore, Harding's amendment to the plan, if we consider it as such, in no way affected defendant's right to subsequently amend pursuant to the provisions of the plan to eliminate the insurance benefits. The trial court stated in its memorandum opinion:

> The court, after carefully reviewing all the documents, can find nothing that would require the defendant to extend insurance coverage beyond the pension termination period. The master group medical coverages and the formal pension plan documents, as well as the summary plan description provide that defendant could as its sole election terminate the coverages and plan. The group insurance booklets made available to plaintiffs provided that coverages would terminate when their employment terminates. Employees who have retired and no longer receive pension benefits under the pension plan for employees of PRPC are not eligible retired employees for continued insurance benefits under the retirement plan.

In construing contracts the words expressing the party's intention should be

given the usual, natural, and ordinary meaning. In the absence of fraud or mistake a contract must be interpreted and enforced as written even though it contains terms which may be thought harsh and unjust. *Ballard v. North American Life and Casualty*, 667 S.W.2d 79 (Tenn.App. 1983). We agree with the trial court's interpretation of the pension plan and insurance documents involved in this case.

Plaintiff's second contention relying upon the doctrine of estoppel is misplaced. Estoppel requires as a minimum (1) reliance upon the statement or actions of another without opportunity to know the truth and (2) action based on that reliance which results in detriment to the one acting. *W.F. Holt Co. v. A & E Electric Company, Inc.*, 665 S.W.2d 722 (Tenn.App. 1983). In the case before us, plaintiffs were charged with the knowledge that the benefit plan could be amended, suspended, or terminated at any time. Harding's representations in no way purported to change the provision of the plan allowing amendment or termination. Furthermore, the record contains no proof that the plaintiffs acted to their detriment by virtue of Harding's representation. There is no proof that any one of them would not have taken lump sum benefits if he had known his insurance benefits could cease, nor is there any proof that any one of them could not obtain in 1983 the same individual insurance coverage that could have been obtained at the time of their retirement in 1979.

The judgment of the trial court is affirmed and costs are assessed against the appellants.

TOMLIN, P.J. (W.S.), and FARMER, J., concur.