NET REALTY HOLDING TRUST,    )
                                         )
     Plaintiff/Appellant,    )    Appeal No.
                                         )    01-A-01-9503-CH-00085
v.                          )
                                       )    Davidson Chancery
JAMES E. MAGGART and        )    No. 93-1061-II
DOROTHY MAGGART,           )
                                       )
     Defendants/Appellees.   )

**FILED**

**Nov. 1, 1995**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

COURT OF APPEALS OF TENNESSEE

MIDDLE SECTION AT NASHVILLE


APPEAL FROM THE CHANCERY COURT FOR DAVIDSON COUNTY

AT NASHVILLE, TENNESSEE


THE HONORABLE C. ALLEN HIGH, CHANCELLOR

KENNETH R. JONES, JR.
ELIZABETH B. THOMPSON
Sherrard & Roe
Suite 2000, 424 Church Street
Nashville, Tennessee  37219
    ATTORNEYS FOR PLAINTIFF/APPELLANT


ALLISON G. LUCAS
Crocker and DeSha
Suite 2909, Stouffer Tower
611 Commerce Street
Nashville, Tennessee  37203
    ATTORNEY FOR DEFENDANTS/APPELLEES

REVERSED AND REMANDED


SAMUEL L. LEWIS, JUDGE

*FACTS*

Net Realty Holding Trust ("NET") the owners of commercial property in Hermitage, Tennessee, brought an action to collect rent after the tenants, James and Dorothy Maggart, (doing business as "The Video Place") surrendered the premises. The Davidson County Chancery Court held that NET was estopped from collecting rent through the end of the lease term.

The Mitchell Company originally owned the subject commercial property when the Maggart's signed the lease on March 16, 1988, selling the property to NET in June of 1989. At the time the lease was signed the structure was not fully constructed.

On the first page of the Mitchell Company's original lease "TERM" is listed, followed by the words: "Five (5) years." Underneath the word "TERM" is "DATE" listed as "March 16, 1988." On the second page of the lease, the lease term is listed as five years. At the bottom of the second page is a statement identifying the page as "THIS FACE PAGE." Later in the lease paragraph number eight provides:

> The original term of this Lease shall be for a
> period as defined on the FACE PAGE of this Lease
> and from the "Commencement Date" hereafter
> provided unless sooner terminated hereby. Said
> term, and TENANT's obligation to pay rent shall
> commence on the earlier of the following dates:
> (a) the date which is sixty (60) days after TENANT
> has been notified in writing that the demised
> premises are ready for occupancy. . . .

A subsection (b), which followed (a) above, is crossed out, apparently done by someone before the lease was signed. The

2

provisions left intact leave the reader with the conclusion that the term of the lease was five years, to begin after the Maggarts had been notified in writing that the premises were ready for occupancy.

The Maggart's brief indicates that they did receive a "rent start letter," although there does not seem to be an exhibit labeled as such. Regardless, the Maggarts admit that they occupied the premises in November of 1988, first paying rent in January of 1989. A five year or 60 month lease thus would conclude in December of 1993 or at the latest January of 1994. At trial NET stipulated that the lease expired on December 31, 1993, and that they would not seek recovery for rent past this date. Additionally, the Maggarts signed an estoppel certificate executed June 13, 1989, in which the Maggarts confirmed some of the more relevant provisions of the lease, one of which was the term. In paragraph (d) of the estoppel certificate the term of the lease is listed as 5 years, commencing on January 6, 1989, and ending January 31, 1994. Thus, it is not too difficult to determine that the expiration of the lease would be in January of 1994 or perhaps December 31, 1993.

During the course of the tenancy, the Maggarts sometimes had problems paying their rent as it came due, and on at least three occasions NET filed detainer actions to recover monies due. In the midst of discussions over a fourth suit to collect rent, the most pivotal factual event of the case occurred. On January 23, 1993, NET attorney John Tishler held a phone conversation with the Maggart's lawyer John Cheadle. During the conversation, Mr. Tishler commented that he believed the Maggart's lease expired on March 15, 1993. Mr. Tishler apparently only consulted the first page of the lease, which stated the lease was for five years and was signed on March 15, 1988. Mr. Tishler may have

3

been ignorant of the fact that the Maggarts had not started paying rent until January of 1989 when the building was finished.

After speaking to his clients the Maggarts, Mr. Cheadle sent Mr. Tishler a letter dated January 22, 1993, the same day of the phone conversation. The letter reportedly confirmed the day's discussion regarding the termination of the lease in March. Later in a letter dated February 10, 1993, Mr. Tishler confirmed that it was his "understanding that the lease expired in mid-March," and also designated an agent to inspect the premises upon the termination of the lease date.

On March 15, 1993, the Maggarts vacated the premises and NET's designated agent accepted the keys after an inspection. On March 26, 1993, NET advised the Maggarts that the lease actually did not expire until January of 1994 and demanded payment of the rent for the remainder of the lease term.

At trial the parties stipulated that the monthly amount of rent, common area, and maintenance, taxes, and insurance under the lease was $4,650 for a total of $44,647.24 if due from March 16, 1993 through the end of the lease term in December of 1993. After the trial, the court held that the statements, letters, and actions of the parties had "set up an estoppel." Specifically the court held that NET's attorney stated the expiration date of the lease was March 15, 1993, and that in reliance upon the statement the tenant's wrote a letter stating they would move out and wanted the landlord to provide a representative to receive the premises.

*Issues*

The issue presented in NET's appeal is limited to one

4

legal question: whether or not NET should be estopped from collecting rent from the Maggarts through the end of their five year commercial lease after NET's attorney told the Maggart's attorney that the lease would expire in March of 1993. To answer this question this Court must review the doctrine of equitable estoppel in Tennessee.

*Equitable Estoppel*

In *Ryan v. Lumberman's Mut. Cas. Co.,* the court stated "[i]t is probably impossible to frame a rigid definition of the doctrine of equitable estoppel because it is constantly growing, and is applied to new conditions as they arise. It rests upon the necessity of requiring men to deal honestly and fairly with their fellow men." 485 S.W.2d 548, 550 (Tenn. 1972).

Estoppel "requires as a minimum (1) reliance upon the statement or actions of another without opportunity to know the truth and (2) action based on that reliance which results in detriment to the one acting." *Campbell v. Precision Rubber Products Corp.,* 737 S.W.2d 283 (Tenn. App. 1987).

As the Tennessee Supreme Court stated in *Rambeau v. Farris*, "It is essential to estoppel that the person claiming it was himself not only destitute of the knowledge of the facts, but without available means of obtaining such knowledge; for there can be no estoppel where both parties have the same means of ascertaining the truth." 212 S.W.2d 359, 361 (Tenn. 1948) *citing Hankins v. Waddell et al.,* 167 S.W.2d 694, 696. Similarly stated, "[f]or estoppel to arise, the act must have been done with the knowledge that it would be relied upon and the other party has acted in reliance without either knowledge or the true

5

state of affairs or the means of learning the true state of affairs." *City of Lebanon v. Baird,* 756 S.W.2d 236 (Tenn. 1988).

Usually, "one having the ability and opportunity to inform himself of the contents of a writing before he executes it will not be allowed to avoid it by showing that he was ignorant of its contents or that he failed to read it." *Soloman v. First American Nat. Bank of Nashville,* 774 S.W.2d 935 (Tenn. App. 1989).

## *Application*

The Maggart's signed a five year lease in March of 1988. They first paid rent in January of 1989. The term of the lease could have been determined in an number of ways, including consulting the lease, or the estoppel certificate. When Mr. Tishler informed Mr. Cheadle of a March 1993 expiration, the Maggarts were not "destitute of the knowledge of the facts, or without available means of obtaining such knowledge." *Rambeau v. Farris*, 212 S.W.2d 359, 361 (Tenn. 1948). They had in their own possession the lease, were represented by counsel, and testified at trial that they did indeed know that a March 1993 termination would have been premature. Generally, a party dealing on equal terms with another is not justified in relying upon representations where the means of knowledge are readily within his reach. *Soloman v. First American Nat'l Bank of Nashville*, 774 S.W.2d 935, 943 (Tenn. App. 1989). Thus, the Maggarts cannot rely on the equitable theory of estoppel.

A party desiring to benefit from the estoppel doctrine must have relied reasonably or justifiably. *Fourth Nat'l Bank v.*

6

*Nashville C. & St. L. Ry. Co.,* 161 S.W. 1144, 1146 (Tenn. 1913). The Maggarts claim that Mr. Tishler's mistaken statement as to a March termination provides sufficient justification to allow them to surrender the premises. The Maggarts also assert that the litigious history of NET induced their abandonment of the space, and that they were not in a strong enough bargaining position to question NET's authority for removing them before the lease term ran. We disagree. Had the Maggarts been fearful of NET's reaction if they had remained on the premises beyond March they could have contacted NET and agreed to the March termination while informing NET that they believed a March termination to be contrary to the lease terms. At no time did the Maggarts communicate to NET that it would comply, while protesting NET's construction of the lease. Had the Maggarts done so and NET maintained its position, the Maggarts then would have been in better position to assert a valid reliance argument.

Estoppel is not favored and it is the burden of the party seeking to invoke estoppel to prove each and every element. *Bokor v. Bokor,* 722 S.W.2d 676, (Tenn. App. 1986). The Maggart's knowledge of the terms of the lease preclude them from validly asserting estoppel.

The Maggarts argue that they should not be held to a higher standard of recall or understanding of the lease than NET. However, it is the Maggarts, not NET who are asserting the estoppel argument, and it is the knowledge or access to means of knowledge on behalf of the party asserting estoppel that is relevant to equitable estoppel in Tennessee.

*Conclusion*

It therefore results that the judgment of the trial court

7

is reversed and the case is remanded to the trial court for further necessary proceedings.  Costs on appeal are taxed to the appellees, James and Dorothy Maggart.


_____

SAMUEL L. LEWIS, JUDGE


CONCUR:


_____

HENRY F. TODD, P.J., M.S.


_____

BEN H. CANTRELL, JUDGE