# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
July 15, 2010 Session

## WILLIAM SEARLE v. HARRAH'S ENTERTAINMENT, INC.

**Appeal from the Circuit Court for Davidson County**
**No. 02C-1837     Amanda McClendon, Judge**

---

**No. M2009-02045-COA-R3-CV - Filed October 6, 2010**

---

This action arises from the alleged harassment of Plaintiff by Defendant, Harrah's Entertainment, Inc., while attempting to collect on a dishonored check. Plaintiff cashed a check for $500 at Harrah's Metropolis Casino in October 2001. The check was dishonored by Plaintiff's bank on the first attempt, but cleared on the second attempt on December 8, 2001. Apparently neither party knew the check had cleared in December, and in January 2002, Plaintiff claims he received threatening phone calls and letters to collect on the check. After receiving a threat of criminal prosecution, Plaintiff and his wife drove to the casino and paid $525.00 to settle the debt; however, the casino could not produce the original check, only a photocopy. Upon further investigation, Plaintiff discovered the check had cleared in December. Plaintiff then filed this action against Harrah's Entertainment, Inc. in the General Sessions Court for Davidson County. After a default judgment was entered, Harrah's filed a petition for writ of certoriari in the Circuit Court asserting that it was not the proper defendant and insufficient service of process. The circuit court granted the petition and set aside the default judgment. Plaintiff then filed an amended complaint asserting claims for negligence, gross negligence, outrageous conduct, and violation of the Fair Debt Collection Practices Act and the Tennessee Consumer Protection Act (TCPA). Following a bench trial, the court found that Harrah's was the proper defendant and ruled in favor of Plaintiff on his claims for negligence, the TCPA, and intentional infliction of emotional distress, and awarded Plaintiff damages of $5,962.95, which was trebled under the TCPA for a total award of $17,888.85. The court also awarded Plaintiff his attorney's fees. Harrah's appeals claiming it was not the proper defendant and it was not properly served. It also challenges the findings of negligence, violation of the TCPA, intentional infliction of emotional distress, and the damages awarded. We have determined that Harrah's waived the issue of insufficient service of process and it is estopped to assert that it is not the proper defendant. We affirm the trial court's findings regarding negligence, violation of the TCPA, and intentional infliction of emotional distress. We find that the trial court erred by including the $5,962.95 award for emotional distress within the amount trebled under the TCPA. Therefore, we remand for the trial court to recalculate the damages awarded under the TCPA

and for a determination of the reasonable and necessary attorney's fees Plaintiff incurred on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part, Remanded**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Robert L. Moore and Dawn Davis Carson, Memphis, Tennessee, for the appellant, Harrah's Entertainment, Inc.

Allen Barnes, Hermitage, Tennessee, for the appellee, William Searle.

**OPINION**

The matters at issue were set in motion on October 27, 2001, when the plaintiff, William Searle, and his wife visited the Harrah's Metropolis Casino in Metropolis, Illinois. While in the casino, Mr. Searle cashed a $500 check. The check was dishonored by Plaintiff's bank due to insufficient funds when it was first presented. The check cleared the bank on the second attempt on December 8, 2001. Although the check cleared the bank, Harrah's mistakenly believed it had not.

Mr. Searle testified that Harrah's sent letters and made telephone calls to his residence in Nashville, Davidson County, Tennessee to collect the perceived debt. He stated he started receiving the phone calls[1] and letters in January of 2002. He also testified that he received two harassing phone calls from a woman, Kristina Thorsby, who identified herself as an employee of Harrah's Metropolis Casino. As he explained it, Ms. Thorsby told him that she was in possession of the original check, that a warrant for his arrest had been issued in Davidson County, and that if he did not promptly pay the check he would be arrested.

Plaintiff also received two letters from Ms. Thorsby. The first letter, dated January 23, 2002, states:

> The personal check #3266 issued to Harrahs Metropolis Casino, for $500 sent to your bank for payment, has been returned. A $25.00 service fee per check has been added to your account. **Balance Due $525**. A return [sic] check is classified under article 17 "DECEPTION"; 5/17-1 "deceptive practices."

---

[1]Harrah's disputes the occurrence of these phone calls.

Section 17-1(B) "General Deception": A person commits a deceptive practice when . . . , (d) . . . Failure to have sufficient funds or credit with the depository when the check or other order is issued or delivered, or when such check or other order is presented or payment and dishonored on each of 2 occasions at least 7 days apart, is prima facie evidence that the offender knows that it will not be paid to the depository, and that he has the intent to defraud . . . . violation of paragraph (d) . . . shall be guilty of a Class 4 felony.

I am sure this has only been an oversight on your part, however in order to avoid any further legal embarrassment, please remit payment in full, by cashier's check or money order, within ten (10) days, Payable To; S.I.R.C.C., Inc. to the following address:

> Harrah's Metropolis Casino
> Attn. Accounting Dept.
> 100 E. Front ST
> Metropolis, IL 62960

The letter was signed by Kristina Thorsby, her title was stated as "the credit/collections manager," and the letter was on "Harrah's Metropolis Casino" letterhead.

Mrs. Searle testified that upon receiving this letter she called Ms. Thorsby to inquire about the check and was informed that payment needed to be made immediately. As a result of the letter and the phone call with Ms. Thorsby, the Searles drove to the casino in Metropolis on Sunday, February 3, 2002 to pay the perceived debt, not knowing that Mr. Searle's check had cleared the bank weeks earlier.[2]

When the Searles arrived at the casino on February 3, Mr. Searle, who was afraid he would be arrested, waited near the front of the casino, while Mrs. Searle went in the casino to pay the perceived debt at the cashier's cage. When she presented $525 in cash to the cashier, Mrs. Searle requested the original of the dishonored check; the cashier, however, informed her that the casino did not have the original check, only a photocopy. Mrs. Searle took the photocopy and as she began to leave, the cashier asked her to sign a release but Mrs. Searle refused, at which time she overheard the cashier request security. Mrs. Searle then quickly left the casino.

---

[2]A second letter, dated Jan. 31, 2002, was received by the Searles after the trip to Metropolis. This letter, which was also from Ms. Thorsby and on Harrah's Metropolis Casino letterhead, stated that she had not received any communication from Mr. Searle and that immediate action was necessary or the issue would be turned over to a collection agency.

As they were driving back to Nashville, the Searles became suspicious of the circumstances since only a photocopy of the dishonored check was provided. Upon returning home, they looked through their previous bank statements and discovered that the $500 check had cleared the bank in December 2001.

Mr. Searle then retained counsel, who sent a letter to Harrah's addressed to the attention of Ms. Thorsby. Mr. Searle's counsel received a reply letter, dated March 8, 2002, from Karen Wosnack, who identified herself as "legal counsel for Harrah's Entertainment, Inc.'s Eastern Division, which includes Harrah's Metropolis Casino." Ms. Wosnack stated that his letter to Ms. Thorsby[3] had been forwarded to her "for handling." Ms. Wosnack went on to state that Harrah's was aware that a mistake was made and that Mr. Searle would be sent a reimbursement check in the amount of $525.

A $525 check was mailed to Mr. Searle on March 27, 2002; however, he chose not to cash the check. Instead, on April 9, 2002, Mr. Searle filed a civil warrant against Harrah's Entertainment, Inc. in the General Sessions Court for Davidson County seeking compensation for damages suffered as a result of the collection actions taken by Harrah's. The civil warrant was served upon Karen Wosnack by mail. Harrah's did not defend the action in general sessions court and, as a result, a default judgment was entered against Harrah's on May 21, 2002.

On June 26, 2002, Harrah's filed a Petition for Writ of Certoriari and Supersedeas, which was granted by the Davidson County Circuit Court. Harrah's then filed a Motion for Summary Judgment on the basis that there was no evidence that any employees of Harrah's Entertainment, Inc. were guilty of the alleged wrongdoing by Plaintiff. The motion was denied. Harrah's filed another motion for summary judgment asserting that it neither owned nor operated Harrah's Metropolis Casino and that the casino was owned and operated by SIRCC, Inc., which was a separate and distinct corporation; the motion was denied. Thereafter, the case languished for an extended period of time for various, irrelevant reasons.[4]

Mr. Searle filed an amended complaint on May 12, 2008, asserting claims for negligence, gross negligence, extortion, outrageous conduct, violations of the Fair Debt Practices Act, and violations of the Tennessee Consumer Protection Act; he sought $500,000 in damages. Harrah's filed an Answer on June 10, 2008. In its answer, Harrah's asserted *inter*

---

[3]This letter does not appear in the record.

[4]Allen Barnes was substituted as counsel for Mr. Searle in late 2007, succeeding Ronald Stone, who previously represented Mr. Searle.

*alia* that it was not the owner or operator of Harrah's Metropolis Casino and that the owner and operator was SIRCC, Inc.

A bench trial was held on August 19, 2009. Mr. Searle testified to the effect the letters and phone calls had on his mental state, which was exacerbated due to the fact that Mr. Searle suffered a massive stroke in December 2001, resulting in difficulty walking, speaking, and reading. Mr. Searle testified that he became extremely nervous and frightened after receiving the letter and the phone calls. He stated he was concerned about being thrown in jail without his medication or his wife to take care of him. Mrs. Searle and the Searles' son also testified, and both of them corroborated Mr. Searle's testimony. Harrah's presented one witness, Louise Rainey, who replaced Kristina Thorsby, and who was the current manager of the credit collections department at the casino in Metropolis.

On September 11, 2009, the trial court entered its judgment finding that Harrah's Entertainment, Inc. was the proper defendant, that Harrah's was negligent and committed extortion and intentional infliction of emotional distress by means of verbal threats. The court also found that Harrah's conduct constituted a violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-101-104(b)(27). The court awarded the following damages: $525.00 as compensation for the cash payment to Harrah's on February 3, 2002, $112.81 for mileage for the trip to the casino on the same date, $6.18 in interest on the wrongful payment, $318.96 in compensation for the February 3, 2002 drive,[5] and $5,000 for Mr. Searle's "serious mental injury." The court also ruled that Mr. Searle was entitled to treble damages under the TCPA, and tripled the compensatory damages of $5,962.95, resulting in an award of $17,888.85. The court also awarded attorney's fees of $20,520.00. This appeal followed.

## ANALYSIS

Harrah's raises numerous issues. It contends that Harrah's Entertainment, Inc. is not the proper defendant in this action and that it was not properly served. Harrah's also contends the trial court erred in finding that Harrah's was negligent, committed extortion, caused intentional infliction of emotional distress, and that it violated the TCPA. Harrah's also challenges the amount of damages awarded as well as the award of attorney's fees and discretionary costs.

For his part, Mr. Searle raises three issues: whether the trial court erred in admitting a purported business record at trial, whether the trial court erred in refusing to allow SIRCC,

---

[5]This was deemed the reasonable fee for a driver.

Inc. to be added as a party to the action, and whether the trial court erred in the amount of damages awarded to Mr. Searle.

ESTOPPEL

Harrah's Entertainment, Inc. asserts it is not a proper defendant because "the officers, agents and employees who would have dealt with the plaintiff concerning the check were officers, agents and employees of SIRCC, Inc. and not officers, agents or employees of Harrah's Entertainment, Inc." Further, Harrah's asserts "there is no relationship between [SIRCC and Harrah's] which would make Harrah's Entertainment, Inc. liable for the actions of officers, agents or employees of SIRCC, Inc." In response, Mr. Searle contends that Harrah's Entertainment, Inc. is estopped to deny that it owns, operates, manages, and controls the casino because, by its actions, Harrah's Entertainment, Inc. repeatedly led the public and Mr. Searle to believe it owns, operates, manages, and controls the casino.

Whether Harrah's Entertainment, Inc. owned or operated Harrah's Metropolis Casino and, thus, whether Harrah's Entertainment, Inc. is a proper defendant was put at issue when Harrah's filed its motion for summary judgment on that ground. Mr. Searle opposed the motion by filing a response that put at issue the assertion that Harrah's Entertainment, Inc. did not own or operate the casino; however, Mr. Searle did not expressly state that Harrah's was "estopped" to make such an assertion.

Our Supreme Court stated that a party does not waive the defense of equitable estoppel by "the failure to use the right label." *Fahrner v. SW Manufacturing, Inc.*, 48 S.W.3d 141, 143 n.1 (Tenn. 2001). The Court reasoned that the party relying on the doctrine of estoppel was not required to use the "right label," such as estoppel, provided the party stated the relevant facts sufficient to present the issue.[6] As was the case in *Fahrner*, Mr. Searle did not waive the issue by failing to use the right labels, "estoppel" or "equitable estoppel," because he presented sufficient facts to demonstrate that Harrah's portrayed itself as the operator of the casino in Metropolis, Illinois and to demonstrate that Mr. Searle relied upon those representations.

We now turn our attention to consider the merits of Mr. Searle's claim of estoppel. The doctrine of estoppel prevents "one party from taking unfair advantage of another, when, through false language or conduct, the person to be estopped has induced another person to

---

[6]The court in *Fahrner* distinguished its holding from that in *Alexander v. Armentrout*, 24 S.W.3d 267 (Tenn. 2000), in which the court held that a party had waived the defense of equitable estoppel, because in *Alexander* the party had not pled any facts sufficient to constitute the defense of estoppel. *Fahrner*, 48 S.W.3d at 143 n.1.

act in a certain way, with the result that the other person has been injured in some way." *Black's Law Dictionary* 453 (7th ed. abridged 2000). The elements of equitable estoppel are:

> (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) Intention, or at least expectation that such conduct shall be acted upon by the other party; (3) Knowledge, actual or constructive of the real facts.

*Werne v. Sanderson*, 954 S.W.2d 742, 745 (Tenn. Ct. App. 1997) (quoting *Consumer Credit Union v. Hite*, 801 S.W.2d 822, 825 (Tenn. App. 1990)).

The party asserting estoppel must demonstrate (1) reliance upon the statement or actions of another without opportunity to know the truth and (2) action based on that reliance which results in detriment to the one acting. *Id.* at 746 (citing *Campbell v. Precision Rubber Products Corp.*, 737 S.W.2d 283, 286 (Tenn. Ct. App. 1987)).

Mr. Searle presented substantial evidence at trial that Harrah's held itself out as the operator of the casino in Metropolis, Illinois. The letterhead on the letters received by Mr. Searle regarding the dishonored check stated "Harrah's Metropolis Casino." Mr. Searle testified that the calls he received regarding the check were from a person who identified herself as with Harrah's Casino. In the letter Mr. Searle received from Karen Wosnack, in response to Mr. Searle's attorney's inquiries into the double payment, Ms. Wosnack identified herself as with Harrah's Entertainment, Inc., which she further stated included Harrah's Metropolis Casino, and she stated that she was going to handle the matter. Mr. Searle also demonstrated at trial that Harrah's website and mailings indicated that it controlled the casino in Metropolis, Illinois. The conduct of Harrah's prior to the filing of the lawsuit, in which its employees indicated that it controlled the casino, are starkly different from its contention following the filing of the lawsuit. As support for its motion to dismiss, Harrah's presented the affidavit of Michael Kostrinsky, who identifies himself as the Managing Attorney for Corporate Litigation for Harrah's Entertainment, Inc. In his affidavit, Mr. Kostrinsky states that "Harrah's Entertainment, Inc. and Southern Illinois Riverboat/Casino Cruises, Inc. are separate and distinct corporations."

Further, Mr. Searle demonstrated that Harrah's held itself out to the public as the operator of the casino. A Security and Exchange Commission filing by Harrah's Entertainment, dated August 31, 2001, stated that Harrah's operated a casino in Metropolis, Illinois. A letter from the Director of Facilities for Harrah's Entertainment, Inc. to Metropolis Water and Light, dated December 4, 2001, requested that bills be sent to him at the mailing

address for Harrah's Entertainment, Inc. in Las Vegas, Nevada. The evidence at trial also showed that in response to a subpoena, FirstStar revealed that the checking account number stamped beneath the endorsement on Mr. Searle's $500 check belonged to Harrah's Entertainment, Inc.[7] Additionally, Louise Rainey, an employee at the casino, testified that once a letter was received from Mr. Searle's attorney regarding the incident, the letter was forwarded to the legal counsel at Harrah's Entertainment, Inc. for handling. The evidence presented by Mr. Searle demonstrates that Harrah's repeatedly and consistently held itself out to be the operator of the casino, which clearly conveyed the impression that it was the entity in control of the casino. *See Werne*, 954 S.W.2d at 746.

The evidence also reveals that Mr. Searle relied upon Harrah's actions and representations by naming Harrah's Entertainment, Inc. as the defendant in this action. Therefore, it would be an injustice to allow Harrah's to now assert that it is not the proper defendant.

Having considered the elements of equitable estoppel and the relevant facts, we have concluded that Harrah's is estopped to deny that it is the proper defendant.[8]

SERVICE OF PROCESS

Harrah's contends it was never properly served. Plaintiff contends that Harrah's waived the issue.

Mr. Searle chose to attempt service of process of the general sessions warrant by certified mail addressed to Karen Wosnack at the corporate offices of Harrah's in Atlantic City, New Jersey. The certified mail was received and signed for by a mailroom clerk, not an officer or agent of Harrah's; it was subsequently delivered to Ms. Wosnack. Harrah's did not respond to the general sessions summons.

A default judgment was entered against Harrah's in the general sessions court. Thereafter, on June 26, 2002, Harrah's filed a Petition for Writ of Certoriari and Supersedeas in which Harrah's asserted that it was not properly served and was not the proper defendant. With its petition, Harrah's submitted an affidavit of Ms. Wosnack, in which she stated that

_____

[7]The only involvement of SIRCC, Inc., which Harrah's alleges is the operator of the casino, is the stamp "SIRCC, Inc." that appears on the payee line of the $500 check written by Mr. Searle; however, Mr. Searle explained the stamped name SIRCC was not on the check when he signed it and presented it to the cashier; it was placed on the check thereafter.

[8]On appeal, Mr. Searle raised the issue of whether the trial court erred in not allowing SIRCC to be added as a party. This issue is moot based upon our determination that Harrah's was the proper defendant.

she was not an authorized agent for service of process for Harrah's Entertainment, Inc.[9] The circuit court granted Harrah's petition for certiorari and set aside the default judgment.[10]

On August 28, 2002, the circuit court ordered the attorney of record for Harrah's to accept service of process on behalf of Harrah's. While the trial court did not explicitly state it, Tenn. R. Civ. P. Rule 4.09 permits a trial court to permit the amendment of service of process "[a]t any time in its discretion and upon such terms as it deems just . . . unless it clearly appears that material prejudice would result to the substantial rights of the party against whom the process issued."

An Amended Complaint was served on Harrah's on May 12, 2008.[11] One month later, on June 10, 2008, Harrah's filed an Answer to the amended complaint.[12] Harrah's did not raise the issue of the sufficiency of the second attempt at service of process in the Answer to the Amended Complaint or at anytime in the trial court. On appeal, however, Harrah's contends that service of process was not sufficient.

Service of process was attempted twice; once while the case was pending in general sessions court and a second time while the case was pending in circuit court. Harrah's properly raised the issue of the sufficiency of the first attempt at service of process and succeeded in getting the default judgment set aside. Harrah's, however, did not challenge the sufficiency of process concerning the second time process was served on Harrah's, while the case was pending in the circuit court.

---

[9]Harrah's also contends that Ms. Wosnack is not even an employee of Harrah's Entertainment, Inc., but an employee of Harrah's Operating Co., Inc. We find this argument disingenuous as this statement directly contradicts Ms. Wosnack's representations made in a letter sent to Mr. Searle in which she represents that she is legal counsel for Harrah's Entertainment, Inc.'s Eastern Division and the letter was printed on Harrah's Entertainment, Inc. letterhead.

[10]We agree that the service of process upon Ms. Wosnack, which was signed for by a mailroom clerk, was likely improper under the current Tennessee Rules of Civil Procedure, as discussed at length in our Supreme Court's recent opinion in *Hall v. Haynes*, — S.W.3d — , No. W2007-02611-SC-R11-CV, 2010 WL 3360115 (Tenn. Aug. 26, 2010).

[11]Prior to that, the plaintiff mailed an improperly amended complaint to Harrah's counsel on September 30, 2002; however, the plaintiff had not obtained leave to amend the complaint. Leave was subsequently obtained and a second amended complaint was then served on counsel.

[12]Harrah's filed a Motion for Summary Judgment in August 2007, which also did not raise the issue of improper service of process.

Tennessee Rule of Civil Procedure 12.02 provides:

Every defense, in law or fact, to a claim for relief in any pleading . . . shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion in writing: . . . insufficiency of process, . . . insufficiency of service of process . . . . A motion making any of these defenses shall be made before pleading if a further pleading is permitted.

The Tennessee Rules of Civil Procedure go on to state that a party "waives all defenses and objections which the party does not present either by motion as hereinbefore provided, or, if the party has made no motion, in the party's answer or reply, or any amendments thereto, . . ."[13] Tenn. R. Civ. P. 12.08. Harrah's did not raise the issue pursuant to Tenn. R. Civ. P. Rule 12.02 in its August 2007, Motion for Summary Judgment or in its Answer to the Amended Complaint, which it filed on June 10, 2008. By failing to do so, Harrah's waived the issue. Tenn. R. Civ. P. 12.08; *Toler v. City of Cookeville*, 952 S.W.2d 831, 835 (Tenn. Ct. App. 1997) (stating insufficient service of process is an affirmative defense, which must be asserted in a responsive pleading, or it is waived).

Having addressed the procedural issues raised by Harrah's, we now turn to the issues that pertain to the trial of this case.

STANDARD OF REVIEW

A bench trial was held on this matter following which the trial court issued its findings. Our standard of review of a trial court's findings of fact is de novo, and we presume that the findings of fact are correct unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Id.*; *see also The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999). Where the trial court does not make findings of fact, there is no presumption of correctness, and "we must conduct our own independent review of the record to determine where the preponderance of the evidence lies." *Brooks v. Brooks*, 992 S.W.2d 403, 405 (Tenn. 1999). We also give great weight to a trial court's determinations of credibility of witnesses. *Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997); *B & G Constr., Inc. v. Polk*, 37 S.W.3d 462, 465 (Tenn. Ct. App. 2000). Issues of law are reviewed de novo

---

[13]The defenses of insufficiency of process and insufficiency of service of process cannot be raised by amendment. Tenn. R. Civ. P. 12.08.

with no presumption of correctness. *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

NEGLIGENCE

Harrah's contends the trial court erred in finding it was negligent. It asserts the evidence was insufficient to establish it failed to use ordinary or reasonable care. Harrah's also asserts that Mr. Searle's damages were caused by FirstStar.

A claim for negligence must establish the following elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal, causation. *Staples v. CBL & Assocs.*, 15 S.W.3d 83, 89 (Tenn. 2000) (citing *White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1998); *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995)). Each element must be proven by the plaintiff by a preponderance of the evidence. *Hale v. Ostrow*, 166 S.W.3d 713, 718 (Tenn. 2005) (citing *Kilpatrick v. Bryant*, 868 S.W.2d 594, 598 (Tenn. 1993)).

The record reveals that Mr. Searle's $500 check cleared Harrah's bank, FirstStar, on December 18, 2001, five weeks prior to the commencement of collection efforts by Harrah's, which began on January 23, 2002. The record also reveals that Harrah's never received the original of Mr. Searle's $500 check from its bank, which is customary when a check is dishonored. The trial court found that Harrah's "should have been on notice that something was amiss, at least, when [Harrah's] was given a photocopy of [Mr. Searle's] check instead of the original, which triggered a duty for [Harrah's] to be certain that the check had not already been paid before commencing collection procedures against Mr. Searle." After considering these and other relevant facts, we have determined the evidence does not preponderate against the trial court's findings that Harrah's failed to exercise ordinary and reasonable care; thus, Harrah's breached its duty of reasonable care by failing to investigate further when it received only a photocopy of Mr. Searle's check.

Harrah's also contends that Mr. Searle and FirstStar were negligent and that their negligence was a cause of Mr. Searle's damages. The trial court did not allocate any fault to Mr. Searle or FirstStar and the evidence cited to by the parties in their briefs does not preponderate against this decision.[14] We, therefore, affirm the trial court's finding that

---

[14]We also note that Harrah's makes no citations to the record in its argument section. Tenn. R. App. P. 27(a)(7) requires an appellant to make citations to the record in support of its argument. Our courts have consistently held that "the failure to make appropriate references to the record and to cite relevant authority

(continued...)

-11-

Harrah's was negligent and that 100% of the fault was attributable to Harrah's.

<u>EXTORTION AND COERCION</u>

Harrah's contends that the trial court erred in finding its collection activities constituted extortion. Harrah's contends that there is no evidence of extortion or coercion, that it was acting under the "good faith belief" that it was collecting on a dishonored check, and that damages for civil extortion and coercion pursuant to the criminal statutes are inappropriate and should not be allowed by the court.

A person commits extortion when a person uses "coercion" upon another person with the intent to obtain property or services. Tenn. Code Ann. § 39-14-112(a). Coercion is defined in Tenn. Code Ann. § 39-11-106(c)(3)(B) as a threat communicated to "wrongfully accuse any person of any offense."

Mr. Searle testified that he received threatening phone calls regarding the $500 check and during one of the phone calls the caller informed him that a warrant had been taken out for his arrest. In one of the letters sent to Mr. Searle on Harrah's letterhead, the collection agent for Harrah's stated that a returned check was a deceptive practice, which was a Class 4 felony under Illinois criminal statutes. Based on these and other relevant facts, the trial court found that Harrah's committed extortion by means of verbal threats. The court further stated it was persuaded that Harrah's had made serious verbal threats due to "the extreme action of Mr. and Mrs. Searle in driving to Illinois on a Sunday afternoon to pay the money that had been demanded when the proof showed that they [the Searles] were normally lackadaisical about their financial affairs." The evidence in the record does not preponderate against the trial court's findings that Harrah's committed extortion; thus, we affirm the trial court's finding on this issue.

As for Harrah's assertion that damages for civil extortion and coercion pursuant to the criminal code are inappropriate and should not be allowed, we note that the trial court did not award any damages for extortion. Thus, this issue is moot. The trial court merely took into

<hr>

[14](...continued)
in the argument section of the brief as required by Rule 27(a)(7) constitutes a waiver of the issue." *Bean v. Bean*, 40 S.W.3d 52, 55-56 (Tenn. Ct. App. 2000) (citing *State v. Schaller*, 975 S.W.2d 313, 318 (Tenn. Crim. App. 1997); *Rampy v. ICI Acrylics, Inc.,* 898 S.W.2d 196, 210 (Tenn. Ct. App. 1994); *State v. Dickerson*, 885 S.W.2d 90, 93 (Tenn. Crim. App. 1993)). It is not the duty of this court to verify unsupported allegations or search the record for facts in support of an appellant's poorly argued issues. *See id.* (citing *Duchow v. Whalen*, 872 S.W.2d 692, 693 (Tenn. Ct. App. 1993)).

account the coercive collection activities of Harrah's, which the trial court found to constitute extortion, to conclude that Harrah's intentionally inflicted emotional distress on Mr. Searle.

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The trial court found that Harrah's conduct was intentional and "so outrageous in character and so extreme in degree as to go beyond all bounds of decency," and that its actions resulted in "serious mental injury" to Mr. Searle. Harrah's contends this was error.

The three essential elements to a cause of action for intentional infliction of emotional distress are: (1) the conduct complained of must be intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of must result in serious mental injury. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997) (citing *Medlin v. Allied Inv. Co.*, 398 S.W.2d 270, 274 (Tenn. 1966); *Johnson v. Woman's Hospital*, 527 S.W.2d 133, 144 (Tenn. Ct. App. 1975)).

Mr. Searle introduced into evidence two collection letters sent to him by Harrah's weeks after his check cleared the bank. He also testified about the threatening phone calls he received from a Harrah's employee. While Harrah's contends the letters are the only collection efforts conclusively proven, thus insisting that the phone calls did not occur, the trial court clearly resolved all factual disputes in favor of Mr. Searle. Moreover, the evidence introduced by Mr. Searle sufficiently established the elements of intentional or reckless conduct by Harrah's employees or agents. Mr. Searle testified that, in one of the phone calls, Kristina Thorsby told him she was in possession of the original check, which could not have been true, and that a warrant for his arrest had been issued in Davidson County, which was also not true.

The second essential element of intentional infliction of emotional distress is conduct that is "so outrageous that it is not tolerated by civilized society." The trial court made the finding that Harrah's conduct would have constituted extortion, which is a type of conduct our society does not tolerate.[15]

Our Supreme Court has found the use of improper methods in attempting to collect

---

[15]While Harrah's contends the trial court made no factual findings regarding the claim of intentional infliction of emotional distress, thus making our review de novo with no presumption of correctness, we cannot agree. The trial court made specific findings regarding the claim of extortion, and such factual findings directly relate to the claim of intentional infliction of emotional distress. It is not necessary for a trial court to repeat itself, once it has made the factual findings and those findings relate to other claims, that is sufficient for a de novo review with a presumption of correctness as to those findings.

an erroneous debt supported a claim for intentional infliction of emotional distress. *Moorehead v. J.C. Penney*, 555 S.W.2d 713, 717 (Tenn. 1977). Harrah's contends *Moorehead* is distinguishable because in *Moorehead*, the department store sent numerous letters to the plaintiffs in the action over an extended period of time concerning a very modest debt. *Id*. at 714-16. We acknowledge that the actions of the creditor in *Moorehead* were more egregious and protracted than those of Harrah's, however, we do not believe *Moorehead* represents the minimum standard for outrageous conduct.

In the case at bar, we find it significant that Mr. Searle's $500 check had cleared Harrah's bank weeks before Harrah's initiated collection efforts and that Harrah's used improper methods to collect an erroneous debt by intentionally misrepresenting that it had the original check in its possession during one of the phone calls and representing falsely that a warrant had been taken out for Mr. Searle's arrest and that he would be arrested if he did not pay the debt immediately. As our Supreme Court commented in *Moorehead*:

> [C]ertain tactics employed by creditors in attempts to collect alleged debts have been held to be actionable . . . "especially where the circumstances attending the effort to collect the claim are such as to invoke the general rule that one who wilfully or intentionally causes great emotional distress, without justification, is liable for such injuries."

*Id.* at 717-18 (citations omitted). Such is the case here.

For its final argument on this issue, Harrah's contends the evidence does not support a finding of emotional distress because the only evidence of serious mental injury was the testimony of Mr. Searle and his son. We find this contention without merit. Serious mental injury may be established by the testimony of the plaintiff as well as "the testimony of other lay witnesses familiar with the claimant." *Miller v. Willbanks*, 8 S.W.3d 607, 615 (Tenn. 1999) (citing *Uebelacker v. Cincom Sys., Inc.*, 549 N.E.2d 1210, 1220 (Ohio Ct. App. 1988); *Peery v. Hanley*, 897 P.2d 1189, 1191 (Or. Ct. App. 1995)). Moreover, expert testimony is not required to establish serious mental injury. *Id.*

Mr. Searle testified to the anxiety, fear, and insomnia he experienced due to the phone calls from Harrah's. His son testified that his father's behavior drastically changed following the phone calls and that his father was stressed and nervous. He also testified how his father rearranged the furniture in their home so that he could look out the window to see if police were coming to arrest him. Mr. Searle's wife testified her husband was very upset about the prospect of going to jail and he was concerned about not having anyone to care for him and not being able to take his medicine to prison should he be arrested. Evidence of insomnia or

depression may support a finding of serious mental injury for a claim of intentional infliction of emotional distress. *Id.* (citing *Medlin*, 398 S.W.2d at 272; *Johnson*, 527 S.W.2d at 140).

Based upon our review of the evidence in the record and the applicable legal principles, we affirm the trial court's finding that Harrah's conduct constituted intentional infliction of emotional distress.

### TENNESSEE CONSUMER PROTECTION ACT

Harrah's contends the trial court erred in finding it violated the Tennessee Consumer Protection Act because, it contends, the transaction did not fit within the definition of "trade, commerce or a consumer transaction" under Tenn. Code Ann. § 47-18-103. Therefore, Harrah's asserts, the Tennessee Consumer Protection Act is inapplicable. We disagree.

Tenn. Code Ann. § 47-18-104(b)(27) prohibits "[e]ngaging in any other act or practice which is deceptive to the consumer or to any other person." The trial court made the following findings regarding the TCPA claim:

> The court finds that [Harrah's] was deceptive in representing to [Mr. Searle] that it had a remedy it did not have, in particular, that a warrant was outstanding in Davidson County for Mr. Searle's arrest, and that it had possession of the check Mr. Searle had written in Harrah's Metropolis Casino on October 27, 2001. Furthermore, [Harrah's] was deceptive in characterizing Mr. Searle as being in violation of an Illinois felony criminal statute.

The trial court also found that Harrah's violation of the Act was willful and knowing, and, thus awarded Mr. Searle treble damages and his attorney's fees.

Harrah's relies upon *Pursell v. First Am. Nat'l Bank*, 937 S.W.2d 838 (Tenn. 1996), to assert that the TCPA does not apply to the facts of this case; however, we find *Pursell* distinguishable. In *Pursell*, the plaintiff filed a TCPA claim against a bank based upon the bank's efforts to repossess collateral that secured a loan. *Id*. at 842. The Court held that the transaction at issue did not fall within the TCPA definition of "trade or commerce."

> The terms "trade or commerce" are specifically defined to limit the Act's application. The actions of the Bank and its agent, even if considered to be unfair or deceptive, did not affect the "advertising, offering for sale, lease or rental, or distribution of any goods, services, or property, tangible or intangible, real, personal, or mixed, and other articles, commodities, or things of value wherever situated." Pursell's allegations, if taken as true, establishes

-15-

only that the defendants breached an agreement to return to him his own property.

*Id*. at 841. The Supreme Court also noted that its holding was "confined to the facts and circumstances of this case." *Id*. at 842.

The transaction at issue here, however, clearly involves trade, commerce, and a consumer transaction. Mr. Searle went to Harrah's casino to gamble, which is Harrah's trade, and Harrah's provided cash to Mr. Searle, in exchange for his $500 check, so that Mr. Searle could engage in Harrah's trade – to gamble in Harrah's casino. The efforts of Harrah's to collect the erroneous debt was a continuation of the consumer transaction.

Having determined the transaction falls within the TCPA, we must now determine whether Harrah's engaged in deceptive practices in violation of the TCPA. In one of the letters Harrah's sent to Mr. Searle, Harrah's erroneously represented that he was in violation of an Illinois criminal statute. Additionally, as Mr. Searle testified, the woman who called him from Harrah's told him that she was in possession of the dishonored check, that there was a warrant for his arrest, and that criminal charges were brought against him. However, Harrah's was not in possession of the original check, the check had cleared Harrah's bank, and there was no warrant for his arrest. Furthermore, the check was dishonored only once and a check must be dishonored twice to give rise to a criminal violation. 720 Ill. Comp. Stat. 5/17-1 (2010). Threatening criminal prosecution to collect a debt constitutes deceptive practices under the TCPA, as the trial court correctly found. *See Turner v. E-Z Check Cashing, Inc.*, 35 F. Supp. 2d 1042, 1052 (M.D. Tenn. 1999) (finding a check cashing company's threat of criminal prosecution against the plaintiff whose check was dishonored constituted a deceptive act under the TCPA). Thus, we affirm the trial court's finding that Harrah's violated Tenn. Code Ann. § 47-19-104(b)(27).

The trial court also found that Harrah's violation of the Act was willful and knowing and awarded Mr. Searle treble damages and his attorney's fees.

TREBLE DAMAGES

Harrah's contends the trial court erred in calculating the treble damages awarded to Mr. Searle by including the $5,000 awarded to Mr. Searle for Harrah's intentional infliction of emotional distress. We agree.

Only actual damages may be trebled under the TCPA, Tenn. Code Ann. § 47-18-109(a)(2)-(3), and damages awarded for emotional distress do not constitute actual damages. Thus, they are not subject to the treble provision of the TCPA. Accordingly, we reverse the

trial court's computation of treble damages and remand for the trial court to recalculate the award without including the $5,000 award for emotional distress.

## ATTORNEY'S FEES

Because the trial court correctly found that Harrah's violation of the Act was willful and knowing, Mr. Searle was entitled to recover his reasonable and necessary attorney's fees. We affirm the award of attorney's fees incurred in the trial court and remand for the trial court to make an award of attorney fees that Mr. Searle incurred on appeal.

## COMPENSATORY DAMAGES & PUNITIVE DAMAGES

For his part, Mr. Searle contends the trial court did not award adequate compensatory damages; he claims that a "fair sum to compensate" him would be $250,000. He also contends the trial court erred in failing to award punitive damages.[16]

The amount of damages awarded by a trial court is a question of fact. *Moody v. Lea*, 83 S.W.3d 745, 751 (Tenn. Ct. App. 2001) (citing *Beaty v. McGraw*, 15 S.W.3d 819, 829 (Tenn. Ct. App. 1998)). We review the amount of damages awarded in a bench trial with the presumption that the trial court is correct, and we will alter the amount of damages "only when the trial court has adopted the wrong measure of damages or when the evidence preponderates against the amount of damages awarded." *Id*. (citing *Beaty*, 15 S.W.3d at 829). The evidence in this record does not preponderate against the trial court's award of compensatory damages. Accordingly, we affirm.

As for Mr. Searle's claim that the trial court should have awarded him punitive damages, Mr. Searle made an election of remedies by electing to receive treble damages under the TCPA; thus, he is not entitled to punitive damages. *See Miller v. United AutoMax*, 166 S.W.3d 692, 697 (Tenn. 2005).

---

[16]On appeal, Mr. Searle also raised the issue of the trial court's admission of Exhibit 25 as a business document under Tenn. R. Evid. 803(6). As we are affirming the trial court's findings as to all of Mr. Searle's claims against Harrah's, we find this issue moot.

## IN CONCLUSION

The judgment of the trial court is affirmed in part and reversed in part, and this matter is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against Harrah's Entertainment, Inc.

_____
FRANK G. CLEMENT, JR., JUDGE